In re **FREEMYER INDUSTRIAL PRESSURE, INC., Debtors.**

No. 01–48644–DML–11.

United States Bankruptcy Court,
N.D. Texas,
Fort Worth Division.

June 24, 2002.

---

Joe Postnikoff, Goodrich, Postnikoff & Albertson, Fort Worth, TX, for plaintiff.

## MEMORANDUM OPINION

DENNIS MICHAEL LYNN,
Bankruptcy Judge.

Before the Court is its Order Directing KGM Express, Inc. to Appear and Show Cause for Sanctions not to Issue for Violation of the Automatic Stay (the "Cause Order") entered on June 6, 2002, upon Debtor's Verified Motion for Order Directing KGM Express, Inc. to Show Cause for Sanctions not to Issue for Violation of the Automatic Stay (the "Motion"). Pursuant to the Cause Order, KGM Express, Inc. ("KGM"), its chief financial officer, its president and Casey Jon Lambright ("Lambright")[1] were directed to appear at a hearing on June 13, 2002, so the Court might determine whether they had "willfully violated the automatic stay of Section 362(a) of title 11 of the United States Code."

At the June 13, 2002, hearing Lambright and representatives of KGM appeared, and Lambright asserted notice to him of

the hearing was inadequate under the Federal Rules of Civil Procedure.[2] The Court therefore adjourned until June 17, 2002, at which time it conducted an evidentiary hearing on the Cause Order. The Debtor presented testimony from Jeanette High ("High") (an accounting employee of Debtor), Craig Freeman ("Freeman") (accounting manager for Debtor) and Joseph Postnikoff ("Postnikoff") (Debtor's lead bankruptcy counsel). Lambright offered testimony from Geraldine Yorek ("Yorek") (owner of KGM), Jerry J. Lester ("Lester") (a driver for KGM) and himself. Each party introduced a number of exhibits into evidence.

Lambright, an attorney licensed in Texas and admitted in the U.S. District Court for the Southern District of Texas, was acting on his own behalf and purported not to represent KGM. As KGM is a corporation and was not represented by counsel, the Court did not permit it to participate in the hearings, though KGM's interests were generally the same as Lambright's and (as noted below) the Court believes Lambright fully articulated KGM's position.

The Court has core jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). This memorandum opinion constitutes the Court's findings of fact and conclusions of law. See FED. R. BANKR.P. 7052 and 9014.

### I. Background

KGM is in the delivery business and had a prepetition relationship with Debtor.

---

1. Debtor only sought to cite KGM by the Motion. After reviewing the Motion the Court determined Lambright and KGM's officers should be named as well. KGM's chief financial officer did not respond to the Cause Order, but Lambright and KGM's owner did.

2. Lambright suggested at various times that the short notice provided to him was through Debtor's (or Postnikoff's) design. While the

notice period is irrelevant, since the Court continued the June 13 hearing, the Court finds, based on Postnikoff's testimony, that there was no such design. The Court further finds that KGM and Lambright, whom Postnikoff served with the Motion, had adequate notice of the June 17 hearing (if not the June 13 hearing). 11 U.S.C. § 102(1).

According to Yorek, Debtor had a poor history of paying for KGM's services pre-petition and had, on occasion, misrepresented the status of payments due to KGM. At the filing of its chapter 11 on November 27, 2001, Debtor owed KGM $5,320.72 (Motion, P. 2, Debtor's schedules and Debtor's Exhibit 2).

On or about January 7, 2002, Debtor sold to Super Industrial Services ("SIS")of Trinidad, West Indies, equipment for a price of $99,750.00 (Debtor's Exhibit 3).[3] Debtor was paid in cash approximately contemporaneously with the sale.

On or about January 11, 2002, Debtor contacted KGM to arrange pick-up of a water blaster system, the largest component of the sale to SIS, and its delivery to the Port of Houston. The water blaster system was picked up on the 11th by Lester but could not be delivered to the Port for shipment that day because the Port closed before Lester could have reached it (testimony of Lester, Yorek).

In the meantime, High had a conversation with a KGM accounting employee who advised her delivery of the water blaster system would not occur unless and until Debtor paid the prepetition debt owed to KGM together with interest.[4] When High stated that Debtor was in chapter 11, she was instructed to send proof of the bankruptcy filing to KGM by facsimile. Though High testified she did this and received a confirmation of receipt, the confirmation is not in the record, and Yorek testified that, to her knowledge, KGM did not receive the facsimile.

It is undisputed, however, that KGM received repeated oral notice of Debtor's filing, from Freeman, High, Mr. Freemyer (Debtor's principal owner), and, finally, Postnikoff (testimony of Freeman, Yorek, Postnikoff and High). Postnikoff also attempted on the 11th to telecopy and then mailed to KGM by first class and certified mail a letter notification of Debtor's filing. The copy sent by certified mail was received by KGM on February 1, 2002 (Debtor's Exhibit 6 and Postnikoff's testimony). According to Freeman (whose testimony was not contradicted by Yorek), Debtor was also directed to contact Lambright as KGM's attorney, and Postnikoff sent a letter by facsimile on January 14th to Lambright informing him of Debtor's chapter 11 case.

Postnikoff had mailed notice of the bankruptcy to all creditors, including KGM at its post office box, on January 9.[5] While

---

3. Lambright challenged Debtor's authority to make the sale to SIS. The Court concurs with Postnikoff's opinion (testimony of Postnikoff) that the sale was in Debtor's ordinary course of business and so authorized pursuant to 11 U.S.C. §§ 1107, 1108 and 363(c)(1). Lambright also referred several times to Debtor's failure to communicate with "the trustee." Apparently Lambright is not familiar with the role of a debtor in possession in chapter 11.

4. Though Lambright suggested that KGM required only payment for delivery of the water blaster system, High and Freeman both were clear that demand was made for the prepetition debt. This testimony is supported by the amount ultimately wire-transferred to KGM and various exhibits presented by Debtor. Yorek's testimony, vague at best, did not counter that of Debtor's witnesses. As to Lambright's contention that his position is evidenced by a reference in an e-mail from Freeman to "post petition" debt (Debtor's Exhibit 9), the Court accepts Freeman's explanation that this was an error. *See* Debtor's Exhibit 11.

5. It is unfortunate that counsel delayed so long in mailing notice. While the delay is immaterial to resolution of the instant matter, it ill-served creditor interests, since the notice set deadlines for creditors which were truncated by the delay. *See* Debtor's Exhibits 4 and 5. Postnikoff explained that he waited to mail notice until Debtor's schedules were filed. This, however, is not a good reason to shorten the time for, e.g., filing claims.

this notice may not have been received by January 11, the Court finds, based upon a preponderance of the evidence, that, either from Postnikoff's January 11 letter or the notice to creditors, KGM had written notice of Debtor's bankruptcy by January 15 at the latest.

On January 14 Lambright received Postnikoff's letter. In a subsequent telephone conversation, Lambright both demanded written proof of the chapter 11 filing and advised Postnikoff that he was not representing KGM in its relations with Debtor. On January 15, Lambright sent a letter to Postnikoff (Debtor's Exhibit 10). The letter again states that Lambright was not representing KGM, but it asserts KGM's position and makes various demands on KGM's behalf. The Court finds that, at the very least, KGM was relying on Lambright to interpret the Bankruptcy Code in connection with its dealings with the Debtor and that Lambright was aware of this.

Despite the fact that Postnikoff was obviously located in Fort Worth (see Debtor's Exhibits 6 and 8) and despite the fact that Debtor's home office telephone was surely known by KGM to bear an 817 area code, KGM and Lambright only checked the Houston bankruptcy court for a filing by Debtor. During their telephone conversation Lambright did not even ask Postnikoff in what court Debtor's case was pending.

Instead, KGM continued to refuse to deliver (or return to Debtor) the water blaster system until funds were wire transferred to it in the amount of $5,697.19 in payment of prepetition debt and interest and the cost of the postpetition delivery. On January 15, desperate to avoid a problem with a large customer, Debtor complied. *See* Debtor's Exhibit 11, Lambright's Exhibit 5, testimony of Freeman. The system was then delivered by KGM.

Thereafter KGM (and Lambright) received ample additional notice of Debtor's bankruptcy, including Postnikoff's certified letter, the Motion and the Cause Order. Yet, as of this writing, KGM remains in possession of the amount paid, having made no effort to reestablish the *status quo ante.* Indeed, Lambright demands payment for his costs and time expended in responding to the Cause Order.

## II. *Discussion*

Lambright and KGM apparently view the automatic stay of 11 U.S.C. § 362(a) as something that may be avoided through the sort of agility that saves a player from becoming "it" in a game of tag. In some jurisdictions, if receipt of a summons can be evaded, a defendant will be unaffected by a complaint. KGM and Lambright would have the Court apply a similar rule to application of the automatic stay. In so arguing, they are dead wrong.

The automatic stay of section 362(a) of the Bankruptcy Code became effective upon the commencement of Debtor's chapter 11 case. *See* 3 COLLIER ON BANKRUPTCY ¶ 362.02 (15th ed. rev. 2002)("The stay is effective automatically upon the filing of a bankruptcy petition..."); 2 NORTON BANKRUPTCY LAW AND PRACTICE 2D ¶ 36:4(1997)("The automatic stay provided by § 362 is self-executing and is effective upon the filing of a voluntary or involuntary case..."); *Elbar Investments, Inc., v. Pierce,* 272 B.R. 198, 203 (Bankr.S.D.Tex.2001)("The stay is effective upon the filing of the case, regardless of notice."); *In re Tom Powell & Son, Inc.,* 22 B.R. 657, (Bankr.W.D.Mo.1982); *Carter v. Van Buskirk,* 16 B.R. 481, 483 (W.D.Mo. 1981)("The stay...does not require actual notice to be effective. The filing of the petition operates as notice to the world."). Even had KGM received no notice whatsoever, any act done in violation of the stay

would be subject to being undone by order of this Court. *See In re Computer Communications*, 824 F.2d 725 (9th Cir.1987); *In re Stonegate Sec. Services, Ltd.*, 56 B.R. 1014 (N.D.Ill.1986)(a citation for contempt is appropriate for violations of the automatic stay); *In re Clark*, 60 B.R. 13, 14 (Bankr.N.D.Ohio 1986); *In re Miller*, 22 B.R. 479, (D.Md.1982); *In re Young*, 14 B.R. 809 (Bankr.N.D.Ill.1981)(acts taken in violation of the automatic stay are void *ab initio*, regardless of whether the party so acting had notice of the filing of the bankruptcy petition). Collection by KGM of its prepetition claim violated Section 362(a)(1),(3) and (6) and so is subject to avoidance. *See also* 11 U.S.C. § 549(a).

■ In the instant case KGM and Lambright had notice of Debtor's chapter 11 case. Oral notice of a filing is sufficient to require a party to observe the stay. *See* 3 COLLIER ON BANKRUPTCY ¶ 362.02 (15th ed. rev.2002); *Carter v. Van Buskirk*, 691 F.2d 390 (8th Cir.1982); *Smith v. First America Bank, N.A.*, 876 F.2d 524, 526 (6th Cir.1989); *In re Lile*, 103 B.R. 830, 836 (Bankr.S.D.Tex.1989); *Stucka v. United States (In re Stucka)*, 77 B.R. 777, 781 (Bankr.C.D.Cal.1987) (any notice, whether oral or written, is sufficient).

■ Even if the oral notice given to KGM and Lambright had not been definitive, as the Court concludes it was, it was unquestionably enough that KGM and any attorney acting for it were placed on inquiry as to whether the automatic stay applied. *See Stucka v. United States*, 77 B.R. at 781 ("Once notice is given of the filing, a creditor is subject to the full force of the automatic stay."); 3 COLLIER ON BANKRUPTCY ¶ 362.02 (15th ed. rev.2002); *Carter*, 691 F.2d at 392. Lambright's half-hearted effort to determine if Debtor had filed, even if sincere (which the Court does not find credible), did not meet the burden of inquiry. It is the responsibility of parties stayed to ascertain whether a bankruptcy case has truly been commenced. *In re Lile*, 103 B.R. at 837; *Wagner v. Ivory (In re Wagner)*, 74 B.R. 898, 904 (Bankr.E.D.Pa.1987) (once a party is put on notice of a bankruptcy filing, he is under a duty to seek further information which should reveal the applicability and scope of the automatic stay); *In re Walters*, 219 B.R. 520 (Bankr.W.D.Ark.1998) (upon being advised of a filing, creditor may not disregard information, but has an affirmative duty to ascertain correctness of information).

Postnikoff, a licensed attorney and officer of the Court, provided written notice to Lambright. Lambright's failure to act, after receiving the letter and speaking with Postnikoff, to prevent KGM's violation of the automatic stay is a breach of his attorney's duty to the law and his responsibilities as, himself, an officer of the Court.

■ Even assuming, *arguendo*, that Lambright and KGM were entitled to more notice of Debtor's chapter 11 case than repeated oral advice and Postnikoff's letter to Lambright, and assuming neither High's facsimile nor Debtor's Exhibit 4 was received before KGM collected its debt, KGM was bound upon learning the stay had been in place to return to Debtor the prepetition sums collected. *See Patton v. Shade*, 263 B.R. 861 (C.D.Ill.2001); *In re Diviney*, 225 B.R. 762, 776, (10th Cir. BAP 1998); *STMIMA Corp. v. Carrigg (In re Carrigg)*, 216 B.R. 303, 304–05 (1st Cir. BAP 1998); *Taborski v. United States*, 141 B.R. 959, 966 (N.D.Ill.1992); *Abrams v. Southwest Leasing and Rental Inc. (In re Abrams)*, 127 B.R. 239, 241–44 (9th Cir. BAP 1991); *In re Adams*, 94 B.R. 838 (Bankr.E.D.Pa.1989) (automatic stay violation, even if innocent, can become willful if the creditor fails to remedy the violation after receiving notice of the stay); *In re Smith*, 180 B.R. 311, 319 (Bankr.N.D.Ga.

1995); *Commercial Credit Corp. v. Reed,* 154 B.R. 471 (E.D.Tex.1993); *In re Bennett,* 135 B.R. 72 (Bankr.S.D.Ohio 1992); *Dubin v. Jakobowski (In re Grosse),* 96 B.R. 29 (E.D.Pa.), aff'd w/o opinion, 879 F.2d 856 (3d Cir.), *cert. denied,* 493 U.S. 976, 110 S.Ct. 501, 107 L.Ed.2d 504 (1989)(a failure to take affirmative action to undo an innocent violation of the automatic stay may constitute a willful violation); *In re APF Co.,* 264 B.R. 344 (Bankr. D.Del.2001); *In re Johnson,* 253 B.R. 857 (Bankr.S.D.Ohio 2000); *In re Flack,* 239 B.R. 155 (Bankr.S.D.Ohio 1999); *In re Sucre,* 226 B.R. 340 (Bankr.S.D.N.Y.1998); *In re Sams,* 106 B.R. 485 (Bankr.S.D.Ohio 1989)(upon learning of a bankruptcy filing, creditor has affirmative duty to reverse any action and return debtor to *status quo*).[6]

■ The Court finds that KGM, with the approval and encouragement of Lambright, willfully violated the stay. Lambright argued KGM's conduct was justifiable because, just as the boy who cried wolf was not believed by villagers, the Debtor's representations about bankruptcy, based on prior prevarications, were assumed to be lies. Even if that argument had weight, Lambright apparently forgot it was the villagers who lost their sheep through failure to heed the boy's cries. Lambright also imputed Debtor's unreliability to Postnikoff, a colleague whose veracity should have been manifest.

Even when cited before this Court, Lambright did not research the stark, black letter doctrine the Court has been at pains to set out above. KGM and Lambright must now suffer the consequences.

■ Debtor has asked the Court to assess damages against KGM pursuant to section 362(h) or, alternatively, section 105(a) of the Bankruptcy Code. Though the case law is mixed, the better view is that section 362(h) may only be invoked by individuals. *See* 3 COLLIER ON BANKRUPTCY ¶ 362.11[3][a] (15th ed. rev.2002). This Court, per Steven A. Felsenthal, J., has held that relief under section 362(h) is limited to individuals. *See IFRB Corp. v. NCNB Texas Nat'l Bank, (In re First RepublicBank Corp.),* 113 B.R. 277, 279 (Bankr.N.D.Tex.1989).

While 11 U.S.C. § 549(a) clearly empowers this Court to require return of the payment of prepetition debt to KGM,[7] the issue remains whether the it may impose further sanction. Debtor's attorneys fees appear to be assessable pursuant to 28 U.S.C. § 1927.[8] For the authority to or-

---

6. The Court is especially troubled that Lambright apparently did not look up the law. Applicability of the automatic stay is not a difficult concept, nor is the law unclear. A five-minute check of any treatise would have corrected Lambright's misperception. Yet up to the close of the June 17 hearing he obviously had not researched the issue before the Court.

7. Though a transfer arguably should be avoided under section 549(a) by adversary proceeding (FED. R. BANKR.P. 7001(1)), FED. R. BANKR.P. 6001 suggests the question of voidability may be reached by the Court in a proceeding initiated by motion, and the Court's authority to avoid an act taken in violation of the stay does not have to be invoked by adversary proceeding.

8. Section 1927 reads:

"Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

By persisting in assertion of an untenable position KGM and Lambright forced Debtor to bring the Motion and try the Cause Order. To the extent section 1927 does not apply to KGM, the Court finds authority to award fees and costs in 11 U.S.C. § 105(a).

der additional sanctions the Court must look to 11 U.S.C. § 105(a).

Section 105(a) authorizes the Court to enter orders and judgments "necessary or appropriate to carry out the provisions of" the Bankruptcy Code. It is necessary and appropriate, in the Court's view, that a debtor in possession have an incentive to prosecute violations of the automatic stay and that other parties, especially creditors, have an incentive to observe the limits imposed on them by the stay. In the case at bar the Debtor was required to utilize its personnel both in the January 11–15, 2002, period and also in the trial of this matter. Recompense for Debtor's expenditure of its resources should be combined with a sufficient warning to KGM and Lambright to ensure against repeat behavior. An award of sanctions against violators of the stay and receipt of those sanctions for the benefit of a debtor acting in a fiduciary capacity serve these ends and is fully consistent with the Court's equity powers.

### III. *Conclusion*

 The money collected by KGM, $5,677.19 must be returned by KGM to Debtor, with interest at the federal judgment interest rate (*See* 28 U.S.C. § 1961(a)), calculated from January 15, 2002, to the date of return. In addition, KGM and Lambright must pay the cost of their wrongdoing. The Court finds that by the conclusion of this matter before this Court Debtor's counsel will have incurred fees of approximately $3,500. Such fees may be awarded by this Court pursuant to 11 U.S.C. § 105(a) and 28 U.S.C. § 1927. Payment to Debtor's counsel of such amount shall be the joint responsibility of KGM and Lambright. Further, the violation here was so blatant and inexcusable that additional sanctions are appropriate. As a sanction, and in accordance with this

Court's authority to "issue any order, process or judgment necessary or appropriate to carry out the provisions of [the Bankruptcy Code]" (11 U.S.C. § 105(a)), this Court will direct payment to Debtor by KGM and Lambright of $3,000 each. Finally, pursuant to 11 U.S.C. § 502(d), the Court, upon satisfaction of the amounts to be paid pursuant to this memorandum opinion, orders allowance of KGM's unsecured claim in the amount of $5,320.72.

Debtor's counsel will prepare and submit for entry an order consistent with this opinion.

Signed this the 24th day of June, 2002.