**In re Alfred BARR, Debtor.**

**No. 8:03–BK–1180–PMG.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Nov. 23, 2004.

Alfred Barr, Tampa, FL, pro se.

Terry E. Smith, Bradenton, FL, for Trustee.

## ORDER ON MOTION FOR ANNULMENT OF AUTOMATIC STAY NUNC PRO TUNC TO PETITION DATE AND FOR RATIFICATION OF THE DISTRICT COURT JUDGMENT

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for a final evidentiary hearing to consider the Motion for Annulment of Automatic Stay Nunc Pro Tunc to Petition Date and for Ratification of the District Court Judgment (the Motion). The Motion was filed by Duwaik Family, LLLP (Duwaik).

On May 8, 2003, the United States District Court for the Middle District of Florida entered a Judgment in favor of Duwaik, and against The Barr Financial Group, LLC, and the Debtor, Alfred Barr, individually, in the amount of $642,279.05. The Debtor appealed the Judgment to the Eleventh Circuit Court of Appeals.

The Eleventh Circuit Court of Appeals thereafter entered an Order staying the appeal to allow Duwaik to file a motion in this Court to seek annulment of the automatic stay. According to the Eleventh Circuit, the purpose of the motion is to allow this Court to determine "what effect, if any, Appellant's bankruptcy proceedings had on the judgment under appeal."

In accordance with the Eleventh Circuit's Order, Duwaik filed the Motion currently under consideration on July 26, 2004.

### Table of Contents

Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .594
 A. The Bankruptcy Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .594
 1. The 2001 Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .594
 2. The 2003 Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .594
 3. The 2004 Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .595
 B. The Duwaik Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .595
 C. Composite time line . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .596
Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .597
 A. Annulment of the stay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .597
 B. Burden of proof . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .598
 C. The evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .599

594

 1. Duwaik's evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .599
 a. No actual knowledge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .599
 b. The Debtor's participation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .600
 c. Duwaik's costs and expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .601
 2. The Debtor's evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .601
 a. Documentary evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .602
 b. Testimony . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .602
Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .602
 A. Actual or constructive knowledge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .602
 B. Lack of good faith . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .603
 C. Harm to Duwaik . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .603
 D. The Debtor's contention and the 2001 Case . . . . . . . . . . . . . . . . . . . . . . . . . . .604
 E. Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .604

## Background

### A. The Bankruptcy Cases

#### 1. The 2001 Case

On September 24, 2001, the Debtor filed a petition under chapter 13 of the Bankruptcy Code (the 2001 Case). The Debtor was represented by an attorney, Jay M. Weller, Esquire, in connection with the initial filing of the petition. The 2001 Case was assigned Case No. 01–17820–8G3.

The Debtor listed only two creditors on his Schedule of Creditors in the 2001 Case. The two creditors were the Money Store, as servicing agent for the Bank of New York, and Fairbanks Capital Corporation. The two creditors were listed as secured creditors holding a first and a second mortgage, respectively, on the Debtor's homestead real property.

The Debtor did not list any creditors holding unsecured claims, either liquidated, unliquidated, contingent, or disputed, on his Schedule of Creditors in the 2001 Case.

Question 4 of the Statement of Financial Affairs requires debtors to disclose all lawsuits to which the debtor is or was a party within the year preceding the filing of the petition. In response to Question 4, the Debtor disclosed only a foreclosure action commenced by the Bank of New York in Hillsborough County, Florida.

The Schedules and the Statement of Financial Affairs were each signed by the Debtor on September 20, 2001, stating "under penalty of perjury" that the Debtor had read them and that they were true and correct.

The Debtor amended his petition once on May 16, 2002, for the purpose of correcting his social security number. No other amendments were filed.

The 2001 Case was dismissed on December 20, 2002, pursuant to an Order Denying Confirmation and Dismissing Case.

#### 2. The 2003 Case

One month later, on January 21, 2003, the Debtor filed a second petition under chapter 13 of the Bankruptcy Code (the 2003 Case), and the case was assigned Case No. 8:03–bk–1180–PMG. The Debtor was not represented by an attorney in connection with the 2003 Case.

The only creditors listed by the Debtor were the Bank of New York and Fairbanks Capital Corporation, scheduled as secured creditors holding an interest in the Debtor's homestead real property. Further, these are the only two creditors that appear on the handwritten creditor matrix filed with the petition.

The Debtor did not list any unsecured creditors on his "Schedule F—Creditors Holding Unsecured Nonpriority Claims."

In response to Question 4 on his Statement of Financial Affairs, the Debtor stated that he had not been a party to any

lawsuits or administrative proceedings within the one-year period immediately preceding the filing of the case.

The Schedules and the Statement of Financial Affairs were each signed by the Debtor on January 21, 2003, stating "under penalty of perjury" that the Debtor had read them and that they were true and correct.

The 2003 Case was dismissed on November 26, 2003.

### 3. The 2004 Case

The Debtor filed a third petition under chapter 13 of the Bankruptcy Code on January 27, 2004 (the 2004 Case), which was assigned Case No. 8:04–bk–1504–PMG. The Debtor was not represented by an attorney in connection with the 2004 Case.

Again, the Debtor listed only the Bank of New York and Fairbanks Capital Corporation as creditors in the case. No unsecured creditors were listed on the Debtor's Schedule F of creditors holding unsecured nonpriority claims. Again, in response to question 4 on his Statement of Financial Affairs, the Debtor stated that he had not been a party to any lawsuits or administrative proceedings within the one-year period immediately preceding the filing of the case. And again the Schedules and the Statement of Financial Affairs were signed by the Debtor under penalty of perjury. The Debtor did, however, include Duwaik on the "Verification of Creditor Matrix" filed with the petition.

The 2004 Case was dismissed with prejudice on March 26, 2004, pursuant to an Order Granting Bank of New York's Motion to Dismiss With Prejudice.

### B. The Duwaik litigation

On July 17, 2001, Duwaik filed an action against the Debtor and three defendants related to the Debtor (the Barr Entities) in the State Court in Colorado (the Duwaik litigation). (Transcript, pp. 36, 44). Generally, the Duwaik litigation involved various causes of action asserted by Duwaik against the Debtor and the Barr Entities for fraud. (Transcript, p. 37).

The Debtor retained an attorney to represent him in the state court action, and the attorney filed a motion to remove the action to the Federal District Court in Colorado. The Debtor's motion was granted, and the action was removed to the District Court in Colorado in October of 2001. (Transcript, pp. 36, 45). Specifically, Duwaik's Complaint was filed in the Federal District Court in Colorado on October 15, 2001. (Duwaik's Exhibit 4).

The Debtor's attorney subsequently filed a motion to dismiss the case based on the allegation that it was pending in an improper venue. (Transcript, pp. 36, 39). Duwaik did not contest the allegation of improper venue, and the action was transferred to the United States District Court for the Middle District of Florida. (Transcript, pp. 39–40).

The original file and docket sheet was received in the Middle District of Florida on December 7, 2001. (Duwaik's Exhibit 4).

The action remained pending in the Federal District Court in Florida, and was actively litigated by the parties, for approximately seventeen months. From December of 2001, until May 8, 2003, for example, a total of 142 docket entries were made in the case. Although the entries described below represent only a portion of the total docket, they are significant as evidence of the level of activity maintained in the case, as well as the affirmative participation of the Debtor:

1. Doc. 16 (1/17/2002)—Stipulation for substitution of counsel from David A.

Zisser to Peter B. King, by the Debtor and the Barr Entities.

2. Doc. 23 (2/28/2002)—Motion by the Debtor and the Barr Entities to dismiss certain counts of the amended complaint and for a more definite statement.

3. Doc. 42 (9/3/2002)—Order authorizing Burton W. Wiand and Peter B. King to withdraw as counsel for the Debtor and the Barr Entities. .

4. Doc. 44 (10/16/2002)—Order referring the case to mediation.

5. Doc. · 61 (12/03/2002)—Order rescheduling the mediation conference for 1/30/2003.

6. Doc. 80 (1/29/2003)—Notice of Appearance by Grady C. Irvin, Esquire, as counsel for the Barr Entities.

7. Doc. 87 (2/3/2003)—Mediation Report, reflecting that the mediation conference was conducted on January 30, 2003, and that the parties had reached an impasse.

8. Doc. 120 (4/10/2003)—Motion by the Debtor to Dismiss and for evidentiary hearing.

9. Doc. 126 (4/11/2003)—Pretrial conference held on April 11, 2003, reflecting that the case was to remain on the Court's trial calendar for May 2003.

10. Doc. 137 (5/1/2003)—Duwaik's Motion for Default Judgment against the Debtor.

On May 8, 2003, the District Court entered a Judgment in favor of Duwaik and against the Debtor in the amount of $642,279.05. (Duwaik's Exhibit 2).

On June 30, 2003, the Debtor filed a Notice of Appeal, and appealed the Judgment to the Eleventh Circuit Court of Appeals.

The case was opened in the Eleventh Circuit on June 30, 2003. (Duwaik's Exhibit 5).

On August 27, 2003, Duwaik filed a Suggestion of the Debtor's bankruptcy in the appellate case. Also on August 27, 2003, Duwaik filed a Motion to Allow Late Claim in the bankruptcy case, and on September 2, 2003, Duwaik filed a Suggestion of the Debtor's bankruptcy in the District Court.

On July 13, 2004, the Eleventh Circuit Court of Appeals entered an Order providing that:

> It appears that Appellant did not notify the district court, Appellee, or this Court about the existence of bankruptcy case no. 03–1180, and it is unclear whether Appellant informed the bankruptcy court about the case. . . .
>
> In order to give the bankruptcy court an opportunity to determine what effect, if any, Appellant's bankruptcy proceedings had on the judgment under appeal, the Court, on its own motion, STAYS this appeal to allow Appellee to file a motion in bankruptcy court to seek annulment of the automatic stay, such motion to be filed within 14 days of the date of entry of this order. . . .

(Duwaik's Exhibit 1, July 13, 2004, Order, p. 2).

On July 26, 2004, Duwaik filed the Motion for Annulment of Automatic Stay that is presently under consideration, in accordance with the Eleventh Circuit's Order. In the Motion, Duwaik requests that the Court retroactively annul the automatic stay pursuant to § 362(d) of the Bankruptcy Code, and declare that the Judgment entered against the Debtor in the Duwaik litigation is valid and enforceable.

### C. Composite time line

As shown above, the Debtor's bankruptcy cases and the Duwaik litigation were pursued simultaneously, and actively, in separate courts. The following time line shows some of the major events that oc-

curred in the various proceedings, together with the dates on which each of the events occurred.

> *July 17, 2001*—Duwaik litigation filed in Colorado State Court.
>
> *September 24, 2001*—Debtor files 2001 Bankruptcy Case. Duwaik claim and litigation not disclosed.
>
> *October 15, 2001*—Duwaik litigation removed to Federal Court in Colorado pursuant to motion filed by Debtor's attorneys.
>
> *December 7, 2001*—Duwaik litigation transferred to Federal District Court in Florida pursuant to motion filed by Debtor's attorneys.
>
> *December 20, 2002*—The Debtor's 2001 Bankruptcy Case dismissed.
>
> *January 21, 2003*—Debtor files 2003 Bankruptcy Case. Duwaik claim and litigation not disclosed.
>
> *January 30, 2003*—Mediation Conference conducted in Duwaik litigation in District Court. Impasse declared.
>
> *May 8, 2003*—Final Judgment entered by District Court against Debtor in Duwaik litigation.
>
> *June 30, 2003*—Debtor appeals Final Judgment to Eleventh Circuit Court of Appeals.
>
> *August 27, 2003*—Duwaik files Suggestion of Debtor's bankruptcy in Eleventh Circuit, a Motion to Allow Late Claim in the bankruptcy case, and on September 2, 2003, a Suggestion of Debtor's bankruptcy in the District Court.
>
> *November 26, 2003*—The Debtor's 2003 Bankruptcy Case is dismissed.
>
> *July 26, 2004*—Duwaik files Motion to Reopen the 2003 Bankruptcy Case and for Annulment of the Automatic Stay.

The Debtor's 2003 Bankruptcy Case was reopened on September 15, 2004, for the purpose of considering Duwaik's Motion for Annulment of Automatic Stay.

## Discussion

 Generally, § 362(a) of the Bankruptcy Code provides that a bankruptcy petition filed under § 301, § 302, or § 303 of title 11 operates as a stay of a broad range of actions against the debtor, property of the debtor, or property of the estate. It is well-established that the stay created by § 362(a) is self-executing, or "automatic," upon the filing of the petition, and actions taken in violation of the stay are generally considered to be void. *In re Freemyer Industrial Pressure, Inc.,* 281 B.R. 262, 266–67 (Bankr.N.D.Tex.2002).

### A. Annulment of the stay

Section 362(d) of the Bankruptcy Code, however, provides for the modification of the stay upon the grounds set forth in the subsection:

**11 U.S.C. § 362. Automatic stay**

. . . . .

(d) On request of a party in interest and after notice and hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, *annulling*, modifying, or conditioning such stay—

(1) *for cause,* including the lack of adequate protection of an interest in property of such party in interest;

. . . . .

11 U.S.C. § 362(d)(Emphasis supplied).

 In this case, Duwaik seeks the annulment of the automatic stay retroactively. The Eleventh Circuit Court of Appeals has explained the distinction between annulling the stay retroactively, as requested by Duwaik, and modifying the stay prospectively to permit a creditor to take an action in the future.

> It is true that acts taken in violation of the automatic stay are generally deemed void and without effect. (Cita-

tions omitted). Nonetheless, § 362(d) expressly grants bankruptcy courts the option, in fashioning appropriate relief, of "annulling" the automatic stay, in addition to merely "terminating" it. The word "annulling" in this provision evidently contemplates the power of bankruptcy courts to grant relief from the stay which has retroactive effect; otherwise its inclusion, next to "terminating," would be superfluous.

. . . . .

■ Accordingly, we hold that § 362(d) permits bankruptcy courts, in appropriately limited circumstances, to grant retroactive relief from the automatic stay.

*In re Albany Partners, Ltd.,* 749 F.2d 670, 675 (11th Cir.1984). Consequently, § 362(d) authorizes the annulment of the stay nunc pro tunc to the date of the petition, provided that the circumstances of the particular case warrant such relief. "Bankruptcy courts have the power to annul an automatic stay retroactively for cause pursuant to 11 U.S.C. § 362(d)(1) in order to rehabilitate stay violations." *In re Webb,* 294 B.R. 850, 853 (Bankr.E.D.Ark.2003)(quoting *In re Hoffinger Indus.,* 329 F.3d 948, 951–52 (8th Cir.2003)).

■ "It is well recognized that a determination of whether to grant relief from stay retroactively is within the wide latitude of the Court with each decision being considered on a case-by-case basis." *In re Stockwell,* 262 B.R. 275, 280 (Bankr.D.Vt. 2001).

■ It is also well-established that a Motion to Annul the Stay should be granted only where the creditor can show the existence of compelling circumstances. "[T]he automatic stay should only be annulled to give effect to actions taken in violation of the stay in limited circumstances." *In re Stockwell,* 262 B.R. at 280.

■ Several factors have been identified by Courts when determining whether circumstances are sufficiently compelling to warrant retroactive annulment of the stay. Such factors include (1) whether the creditor had actual or constructive knowledge of the bankruptcy filing, (2) whether the debtor acted in bad faith, (3) whether grounds would have existed for modification of the stay if a motion had been filed before the violation, (4) whether the denial of retroactive relief would result in unnecessary expense to the creditor, and (5) whether the creditor has detrimentally changed its position on the basis of the action taken. *Id.* at 281.

Of the factors listed, the debtor's actions and lack of good faith are important in evaluating whether retroactive relief is warranted. *In re Webb,* 294 B.R. at 853("This Court finds that Debtor's lack of good faith almost from the start of her foray into the bankruptcy process is the most important factor in evaluating whether such relief is warranted."). See also *In re Syed,* 238 B.R. 126, 132–33 (Bankr.N.D.Ill.1999)(Retroactive annulment of the stay is appropriate where the creditor did not have actual knowledge of the stay, and would be unfairly prejudiced if the debtor were permitted to use the stay as a defense to his action).

**B. Burden of proof**

Section 362(g) of the Bankruptcy Code provides as follows:

**11 USC § 362. Automatic stay**

. . . . .

■ (g) In any hearing under *subsection (d)* or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

(2) *the party opposing such relief has the burden of proof on all other issues.*

11 U.S.C. § 362(g)(Emphasis supplied). Under this section, the creditor seeking retroactive relief must first show the presence of circumstances warranting annulment of the stay, and the debtor then bears the ultimate burden of proving that the request for retroactive relief from the stay should be denied. *In re Stockwell,* 262 B.R. at 280.

■ "Pursuant to Section 362(g)(2), the debtor has the burden of proof to demonstrate that 'cause' does not exist to annul the stay under Section 362(d)(1)." *In re National Environmental Waste Corporation,* 191 B.R. 832, 836 (Bankr.C.D.Cal. 1996).

### C. The evidence

#### 1. Duwaik's evidence

Duwaik contends that annulment of the stay is warranted in this case (1) because Duwaik had no notice or actual knowledge of the Debtor's bankruptcy cases at the time that the Judgment was entered against him in the Duwaik litigation, (2) because the Debtor actively participated in the Duwaik litigation without disclosing the bankruptcy cases, and (3) because Duwaik expended approximately $35,000.00 to $40,000.00 in litigation costs and attorney's fees to prosecute the Duwaik litigation.

#### a. No actual knowledge

To establish that Duwaik lacked notice or actual knowledge of the Debtor's bankruptcy cases, Duwaik submitted the record of the Debtor's 2001 Case and the 2003 Case, and also the testimony of William R. Rapson, Esquire, and Omar Duwaik.

First, the Court takes judicial notice of the record of Case No. 01–17820, Case No. 8:03–bk–1180–PMG, and Case No. 8:04–bk–1504–PMG filed in this Court. The record in the 2001 Case and the 2003 Case clearly reveal that the Debtor failed to list Duwaik as a creditor, and also failed to disclose the Duwaik litigation as litigation in which the Debtor was a party.

As set forth above, the only creditors disclosed by the Debtor on his bankruptcy schedules were the Bank of New York and Fairbanks Capital Corporation, and the only litigation disclosed by the Debtor was the foreclosure action pending in Hillsborough County. Duwaik does not appear anywhere in the schedules or other papers filed by the Debtor in connection with either the 2001 Case or the 2003 Case, even though Duwaik had filed the Colorado litigation and asserted the claim against him before the 2001 Case was filed.

In fact, in a prior proceeding before this Court, the Debtor acknowledged that he did not disclose Duwaik as a creditor in his bankruptcy cases. Specifically, upon learning of the existence of the 2003 Case in August of 2003, Duwaik filed a motion to allow its claim as a late claim in the Debtor's chapter 13 case. At the hearing on the motion, the Debtor stated to the Court:

If I should have listed that properly, then in all fairness the Duwaik Family LLLLP should have been listed, they should have been given notice. That is my particular error, so in that particular fact they are absolutely correct. They do have a judgment from the District Court. I do not dispute that either.

(Duwaik's Exhibit 7, Transcript of October 2, 2003, hearing on Motion to Allow Late Claim, p. 19). The Debtor offered no meaningful explanation at that hearing for his failure to disclose Duwaik as a creditor in either the 2001 Case or the 2003 Case.

Second, at the hearing on the Motion currently under consideration, William R.

Rapson (Rapson), Duwaik's attorney, credibly testified that he was hired by Duwaik to commence the Duwaik litigation against the Debtor, and that he initially filed the Complaint in Colorado on July 17, 2001. (Transcript, pp. 36, 44).

Rapson testified that neither the Debtor nor the Debtor's attorneys ever disclosed the 2001 Case or the 2003 Case to him during the entire period that the Duwaik litigation was pending in the District Court. (Transcript, pp. 40, 59–60). According to Rapson, "[t]here was no communication of any kind at any point in time under any circumstances about bankruptcy until my conversation with Mr. Duwaik on or about August 19, 2003." (Transcript, pp. 43–44).

In fact, Rapson also testified that he had two face-to-face meetings with the Debtor, at the Mediation Conference on January 30, 2003, and at a Pretrial Conference in District Court, and that the Debtor never informed him during those meetings that he had filed any bankruptcy cases. (Transcript, pp. 42–43, 65). Significantly, the Debtor concurs with Rapson's testimony in this regard, and concedes that he did not notify Rapson of his bankruptcy cases during the meetings. (Transcript, p. 77).

Further, Rapson testified that he did not learn of the Debtor's 2003 Case until August 19 or August 20 of 2003, during a conversation with his client, and that he did not learn of the 2001 Case until approximately one month prior to the final evidentiary hearing on this Motion. (Transcript, pp. 38, 40–41).

Finally, Omar Duwaik testified that the Debtor never notified him of his bankruptcy cases while the Duwaik litigation was pending in the District Court. Omar Duwaik also testified that he had no independent knowledge that the Debtor had filed any bankruptcy cases until August 19, 2003. (Transcript, p. 109). Omar Duwaik testified that on that date he received a telephone call from an attorney with the Department of Justice who informed him of the Debtor's bankruptcy filing. (Transcript, p. 110).

### b. The Debtor's participation

To establish that the Debtor actively participated in the Duwaik litigation, Duwaik presented the docket of the action in the District Court for the Middle District of Florida. (Duwaik's Exhibit 4).

From the date the case was opened in the District Court in Florida (December 7, 2001) until December 20, 2002, the District Court docket reflects that at least seventeen pleadings or papers were filed either by the Debtor personally or by his attorneys on his behalf.

The papers filed by or on behalf of the Debtor include Doc. 16 (Substitution of Counsel), Doc. 17 (Motion to Extend Time to Answer), Doc. 19 (second Motion to Extend Time to Answer), Doc. 21 (third Motion to Extend Time to Answer), Doc. 23 (Motion to Dismiss and for More Definite Statement), Doc. 32 (Stipulation for Order Compelling Depositions), Doc. 36 (List of Nonexpert Witnesses), Doc. 38 (Answer and Affirmative Defenses to Duwaik's Second Amended Complaint), Doc. 40 (Motion to Withdraw as Attorney), Doc. 47 (Notice of Unilateral Scheduling of Mediation), Doc. 51 (Response to Duwaik's Motion to Participate by Phone at Mediation), Doc. 52 (Response to Duwaik's Motion to Compel Answers to Discovery), Doc. 55 (Response to Order to Show Cause), Doc. 56 (Notice of Judicial Opinion for Definitive Statement of Court's Change), Doc. 65 (Motion for Show Cause Hearing), Doc. 66 (Motion to Strike), and Doc. 67 (Motion for Reconsideration).

The Debtor's 2001 Case was pending during the entire time that the Debtor was filing the papers described above. The

docket, however, does not reflect that the Debtor ever filed a Suggestion of the Pendency of the 2001 Case during this one-year period.

The Debtor filed his second case, the 2003 Case, on January 21, 2003, while the Duwaik litigation was still pending in the District Court. The Debtor did not, however, file a Suggestion of the Pendency of the 2003 Case in the District Court action. Instead, the docket shows that on January 24, 2003, three days after the 2003 Case was filed, the Debtor filed a Motion for More Definite Statement in the Duwaik litigation in District Court. (Doc. 79). Additionally, the Debtor personally attended a Mediation Conference in the case on January 30, 2003, only nine days after he had filed the 2003 Case. (Transcript, pp. 42, 65).

Further, the docket reflects that in the three and one-half month period between January 21, 2003 (the date that the 2003 Case was filed) and May 8, 2003 (the date that the Judgment was entered against the Debtor), at least eighteen additional pleadings or papers were filed by the Debtor.

The additional papers filed by the Debtor include Doc. 79 (Motion for More Definite Statement), Doc. 88 (Motion to Compel Duwaik to Respond to Discovery), Doc. 89 (Response to Motion for Partial Summary Judgment), Doc. 93 (Motion for Default Judgment against Duwaik), Doc. 94 (Response to Motion to Strike and to Motion for Default), Doc. 103 (Motion for Reconsideration), Doc. 108 (Objection to Duwaik's Motion to File Reply to Debtor's Response to Motion for Summary Judgment), Doc. 115 (Motion to Strike Supplement), Doc. 116 (Submission Regarding Request for Hearing), Doc. 116 (second entry—Motion to Dismiss Duwaik's Motion to Quash Subpoenas), Doc. 117 (Pretrial Statement), Doc. 120 (Motion to Dismiss and for Evidentiary Hearing), Doc.

121 (Memorandum in Support of Motion to Dismiss), Doc. 122 (Amendment to Submission), Doc. 124 (Addendum to Pretrial Statement), Doc. 125 (Witness List), Doc. 125 (second entry—Exhibit List), and Doc. 128 (Motion to Vacate Default Judgments).

The Debtor's 2003 Case was pending in Bankruptcy Court during the entire time that the Debtor was participating in the Duwaik litigation by filing the eighteen pleadings or papers described above.

### c. Duwaik's costs and expenses

To establish the detriment that Duwaik would experience if the Judgment were invalidated, Duwaik presented the testimony of William R. Rapson.

Rapson testified that he and his law firm provided services to Duwaik with a value of approximately $35,000.00 to $40,000.00 between the date on which the Debtor filed his 2003 Case, and the date on which the Judgment was entered against the Debtor. (Transcript, p. 63).

### 2. The Debtor's evidence

The Debtor contends that the automatic stay should not be annulled in this case because the Debtor's attorneys notified Duwaik's attorneys of his bankruptcy. The Debtor further contends that all of the actions taken in connection with the Duwaik litigation after the filing of the 2001 Case were void, regardless of whether Duwaik had notice or actual knowledge of his bankruptcy cases. According to the Debtor, the law prohibited the filing of the Complaint by Duwaik [because of the filing of the 2001 Case], so that it was not necessary to inform Duwaik or his attorneys of the bankruptcy petitions. (Transcript, pp. 77, 85, 87). Specifically, the Debtor testified that "[b]ased on my understanding of the law, they were prohibited from filing a complaint, so it was not necessary to even bring it [the 2003 Case] up in discussion." (Transcript, p. 77).

### a. Documentary evidence

The Debtor offered two exhibits into evidence at the final evidentiary hearing in this case. The exhibits were admitted into evidence as the Debtor's Exhibit Number 1 and Exhibit Number 2.

Exhibit Number 1 consists of a letter dated December 18, 2002, from the Administrative Office of the Courts for the Thirteenth Judicial Circuit of Florida. The letter is addressed to the Debtor. Essentially, the letter constitutes the Office's response to the Debtor's complaint regarding a Certified Process Server.

Exhibit Number 2 is a composite exhibit that apparently consists of all of the documents produced by a records custodian for Paine Webber in connection with the Duwaik litigation. Essentially, the exhibit consists of a series of documents regarding financial transactions and accounts at Paine Webber, most of which predated the filing of the Debtor's 2001 Case.

Neither of the Exhibits submitted by the Debtor is probative of the primary issues in this case. Neither of the Exhibits has any bearing on whether Duwaik had notice or actual knowledge of the Debtor's bankruptcy cases, whether the Debtor acted in good faith in filing the cases and dealing with his creditors, or whether Duwaik was prejudiced by continuing to prosecute the Duwaik litigation after the filing of the bankruptcy cases.

The Debtor offered no letters, faxes, emails, memoranda, pleadings, or other documentary evidence to support his contention that Duwaik was informed of the bankruptcy cases by either the Debtor himself or by his attorneys.

### b. Testimony

The Debtor did not call any additional witnesses to testify on his behalf at the final evidentiary hearing, although he did examine Rapson and Omar Duwaik at length.

Even though the Debtor was represented by various attorneys during the course of the Duwaik litigation, and even though the Debtor asserted that his attorneys notified Duwaik of the pending bankruptcy cases (Transcript, p. 79), the attorneys did not appear at trial or testify as to the method and date on which they provided such notice to Duwaik.

Rapson and Omar Duwaik credibly and unequivocally testified that they never received notice of the bankruptcy cases from the Debtor prior to the entry of the Judgment against him. (Transcript, pp. 38, 40–41, 43–44, 59–60, 109–10). Their testimony was not contradicted by the testimony of any other witnesses or by any documentary evidence offered by the Debtor.

### Conclusion

The Court determines that the Motion for Annulment of Automatic Stay Nunc Pro Tunc to Petition Date and for Ratification of the District Court Judgment should be granted.

### A. Actual or constructive knowledge

First, the record is abundantly clear that Duwaik did not have either actual or constructive knowledge of the Debtor's bankruptcy cases.

Duwaik's Motion for Annulment of the Automatic Stay had been pending for more than two months before this hearing, a preliminary hearing was conducted more than one month before this hearing, and all parties were properly notified of this final evidentiary hearing scheduled on Duwaik's Motion. All evidence pertaining to the Motion was required to be presented at this final hearing.

Nothing in the record or the evidence presented at trial, however, reveals that Duwaik had either notice or actual knowl-

edge of the Debtor's bankruptcy cases. The Debtor did not disclose Duwaik as a creditor on his schedules in the Bankruptcy cases, and did not disclose the Duwaik litigation as a pending lawsuit. Further, no notice of the pending bankruptcy cases was filed by the Debtor in the District Court action. Finally, the uncontradicted testimony of William Rapson and Omar Duwaik establishes that they did not learn of the Bankruptcy case until August 19, 2003, when an attorney with the Department of Justice spoke with Omar Duwaik on the telephone. Upon learning of the bankruptcy case on August 19, 2003, Duwaik immediately filed on August 27, 2003, the Suggestion of bankruptcy in the appellate case, and also filed a motion to allow the claim in the bankruptcy case, and on September 2, 2003, Duwaik filed a Suggestion of bankruptcy in the District Court case.

Duwaik did not have either actual or constructive knowledge of the Debtor's bankruptcy cases while the Duwaik litigation was pending in the District Court or at the time that the Judgment was entered against the Debtor.

### B. Lack of good faith

Second, the Court finds that the Debtor did not act in good faith in his bankruptcy cases with respect to Duwaik.

It is clear that the Debtor did not disclose Duwaik as a creditor or potential creditor on his bankruptcy schedules in either the 2001 Case or the 2003 Case. It is also clear that he did not disclose the Duwaik litigation as a pending lawsuit in either of those cases, although litigation had been filed by Duwaik in Colorado prior to the Debtor's 2001 Case, and the litigation continued actively through both the 2001 Case and the 2003 Case. It is clear that the Schedules and the Statements of Financial Affairs, which the

Debtor signed under oath, were materially false. Further, given the Debtor's obvious awareness of the Duwaik litigation, it is clear that the false statements on the Schedules and Statements of Financial Affairs were made knowingly by the Debtor.

■ The Debtor's omissions are not excusable. Although the Debtor asserts that he filed the bankruptcy cases for the purpose of reinstating the mortgages on his home, debtors are not permitted to pick and choose the assets and liabilities that they wish to disclose in their bankruptcy cases. "Pursuant to 11 U.S.C. § 521 and Bankruptcy Rule 1007, a debtor must file Schedules disclosing financial information fully, completely, accurately and honestly. A debtor may not pick and choose which assets and liabilities to disclose." *In re Robinson*, 198 B.R. 1017, 1022 n. 6 (Bankr. N.D.Ga.1996). See also *In re Rohl*, 298 B.R. 95, 104 (Bankr.E.D.Mich.2003).

The Debtor's lack of good faith is also evidenced by the fact that he actively participated in the Duwaik litigation at the same time that he was prosecuting his bankruptcy cases. This is not a case in which the Debtor passively allowed the action to proceed in another forum due to inattention or inadvertence. He was actively involved in both courts simultaneously.

Further, it is clear that the Debtor was aware of his right to assert the automatic stay in the Duwaik litigation, since he had successfully availed himself of that right by staying the foreclosure action on his homestead.

The Debtor did not act in good faith with respect to Duwaik in filing his bankruptcy cases or in dealing with Duwaik.

### C. Harm to Duwaik

Finally, the Court finds that Duwaik was prejudiced by the Debtor's failure to notify

either Duwaik or Duwaik's attorneys of his bankruptcy cases. Between January of 2003 and May of 2003, Duwaik expended significant time and effort in the prosecution of the District Court action, and incurred approximately $40,000.00 in attorney's fees and costs in connection with the case.

### D. The Debtor's contention and the 2001 Case

The Debtor contends that the Duwaik litigation was filed after the Debtor filed his 2001 Case, and that all actions taken in the Duwaik litigation are therefore void as violations of the automatic stay.

First, the evidence established that the Duwaik litigation was actually commenced before the Debtor filed the 2001 Case. Consequently, the filing of the initial complaint by Duwaik did not violate the stay.

The Debtor's contention also includes the assertion that the filing of the 2001 Case prohibited Duwaik from continuing to prosecute the Duwaik litigation after the date on which the Debtor filed his bankruptcy petition. However, the Debtor did not notify Duwaik of the 2001 Bankruptcy Case, and continued to participate actively in the Duwaik litigation. After the Debtor filed the 2001 Case, he removed the Duwaik litigation from the State Court to the Federal Court in Colorado, contested venue in the Federal Court in Colorado, and participated actively in the litigation in the Federal Court in Florida, all without any suggestion in the Duwaik litigation or indication to Duwaik that the Debtor had filed the 2001 Bankruptcy Case, and all without any indication in the 2001 Bankruptcy Case that the Duwaik litigation existed and was proceeding.

The Court gives little weight to the Debtor's contention that all actions taken in the Duwaik litigation were void, and that he therefore was not required to notify Duwaik of his pending bankruptcy cases.

While the debtors assert that they were under no affirmative obligation to alert or remind a creditor regarding their existing bankruptcy, nor apparently to alert even their counsel of the post-petition foreclosure proceedings, *a debtor is under a duty to exercise due diligence in protecting and pursuing his or her rights and in mitigating any damages with regard to a creditor's violation of the automatic stay. In re Sammon,* 253 B.R. 672 (Bankr.D.S.C. 2000).... it is clear to this Court that *a debtor may not remain "stealthily silent" while a creditor unknowingly violates the automatic stay* in order to reap strategic or monetary advantage.

*In re Stockwell,* 262 B.R. at 281 (Emphasis supplied).

For these reasons, and for the reasons discussed extensively in this opinion, the Court cannot determine that the actions in the Duwaik litigation during the 2001 Case were void, and therefore the automatic stay that arose upon the filing of the petition in the 2001 Case should be annulled retroactively with respect to Duwaik and the Duwaik litigation to the date on which the 2001 Case was filed.

### E. Relief

Based on all of the facts and circumstances described above, the Court finds that Duwaik's Motion should be granted, that the automatic stay should be annulled retroactively for "cause" within the meaning of § 362(d)(1) of the Bankruptcy Code, and that the Debtor's bankruptcy proceedings should have no effect on the Judgment entered by the United States District Court for the Middle of Florida on May 8, 2003.

Accordingly:

**IT IS ORDERED** that:

1. The Motion for Annulment of Automatic Stay Nunc Pro Tunc to Petition Date and for Ratification of the District Court Judgment, filed by Duwaik Family, LLLP, is granted.

2. The automatic stay arising at the filing of the Debtor's bankruptcy petitions is annulled retroactively with respect to the Duwaik Family, LLLP and the Duwaik litigation.

3. The Debtor's bankruptcy proceedings shall have no effect on the validity of the Judgment entered by the United States District Court on May 8, 2003.