**In re Chester K. STOCKWELL and Alice Stockwell, Debtors.**

**No. 95–10830.**

United States Bankruptcy Court, D. Vermont.

May 15, 2001.

276

Andre D. Bouffard, Downs, Rachlin & Martin, Burlington, VT, for creditor.

Rebecca Rice, Cohen & Rice, Rutland, VT, for debtors.

## *MEMORANDUM OF DECISION RE-GARDING MOTION FOR NUNC PRO TUNC RELIEF FROM AUTO-MATIC STAY*

COLLEEN A. BROWN, Bankruptcy Judge.

The matter before the Court is the disputed Motion for Relief from Stay dated March 14, 2001 [Dkt.# 99–1] filed by CAPX Realty LLC (hereafter "CAPX"), successor to Capital Crossing Bank f/k/a Atlantic Bank & Trust Company ("the Movant") seeking relief from the automatic stay *nunc pro tunc.* An evidentiary hearing was held on April 12, 2001, and for the reasons set forth below, the Motion for Relief from Stay *nunc pro tunc* is granted in part and denied in part.

### *Background*

The debtors, Chester K. Stockwell and Alice Stockwell, filed a petition under chapter 13 of title 11 U.S.C. ("the Bankruptcy Code") on October 23, 1995. The Court (Conrad, J.) confirmed the debtors' chapter 13 plan by Order dated February 9, 1996. Thereafter, the debtors requested and obtained approval of a modified chapter 13 plan on December 29, 1998. All payments due under the modified confirmed plan have been completed. However, the debtors have failed to pay certain first mortgage payment obligations to CAPX outside the plan and have also failed to pay certain property taxes on the subject real property. Specifically, the debtors have failed to make any regular payments on their mortgage loan for 24 months and have failed to pay property taxes for the tax years 1995 through 2000. For purposes of this motion, as of August 1, 1999 the amount the debtors owed to CAPX is deemed to be $60,667.94, the subject property is deemed to have a fair market value of $130,000, and the total property tax delinquencies are deemed to be $22,021.25 through the tax year 2000.

The holder of the subject mortgage obligation has changed several times since the debtors entered into the underlying loan transaction. In October, 1996, The Merchants Bank transferred its mortgage interest in the debtors' property to Atlantic Bank & Trust Company (hereafter "Atlantic"). The Assignment of Mortgage dated October 25, 1996 was recorded in the land records of the Town of Bradford, Vermont. The record reflects that Atlantic notified the chapter 13 trustee of the transfer in

writing on or about November 19, 1996, and also notified the debtors of the transfer in writing on or about December 31, 1999. That the debtors' counsel had notice of the transfer is reflected by her correspondence to Atlantic regarding the first amended chapter 13 plan on December 10, 1996. The parties apparently agree, however, that prior to filing this motion for lift stay relief, neither Merchants Bank nor Atlantic notified the Bankruptcy Court or the Clerk's Office of the loan transfer or that Atlantic held a claim in this case.

After acquiring the subject mortgage loan, Atlantic changed its name to Capital Crossing Bank. Thereafter, on March 14, 2000, Capital Crossing Bank assigned the debtors' mortgage loan to CAPX, its "affiliate." Neither Atlantic nor CAPX notified the Court or Clerk's Office of the name change or this assignment. When the debtors filed their motion to modify their plan in 1998, they did not notify Atlantic; rather, the Certificate of Service by debtors' counsel lists The Merchants Bank as a creditor of record, and does not show any service on Atlantic. The chapter 13 trustee made periodic distributions to Atlantic under the plan. The parties have filed invoices reflecting "certain payments" to Atlantic, by the trustee, in varying amounts from February 17, 1998 through November 4, 1999.

Sometime in mid–1999, the debtors defaulted on their regular mortgage payments to Atlantic, which were being made directly by the debtors, i.e., outside the plan. Atlantic served a notice of default on the debtors on or about August 14, 1999, at a time when the debtors were five months in arrears on their regular (postpetition) mortgage payments. The debtors did not advise the Movant of their open chapter 13 case in response to the default notices, nor at any time thereafter. In October, 1999, the Movant commenced an action for foreclosure in Orange County Superior Court against the debtors based upon their default under the Note secured by the first mortgage on the debtors' residential real property. The debtors failed to respond to the Movant's Foreclosure Complaint and a Judgment Order and Decree of Foreclosure was entered by default on March 22, 2000. The debtors had six months, i.e., until September 22, 2000, to redeem the property under the Foreclosure Decree, but did not do so.

The record reflects that in November and December, 1999, Alice Stockwell corresponded directly with the Movant's counsel concerning the debtors' intent to refinance their mortgage, but again said nothing about the pending chapter 13 case. In a letter dated December 6, 1999, the Movant's counsel advised Ms. Stockwell that the Movant had filed a Motion for Default Judgment in the foreclosure action and that a foreclosure decree would be entered providing a six month redemption period. Once again, despite clear knowledge of Movant's actions to enforce the mortgage in state court, neither of the debtors advised the Movant of the open chapter 13 case or raised the issue of stay violation.

After the redemption deadline expired and the Movant recorded the Foreclosure Judgment and Certificate of Non–Redemption in the Bradford Land Records, the Movant received a final payment from the chapter 13 trustee under the debtors' plan. Apparently this payment was significantly larger than the previous monthly payments and thus attracted some special attention. The Movant immediately contacted the Bankruptcy Court Clerk's Office and was informed that the debtors had an open chapter 13 case. On November 22, 2000, when it learned that the debtors had an open chapter 13 case, and before it took possession of the mortgaged property, the

Movant advised the debtors' attorney that it intended to seek lift stay relief. After unsuccessful settlement discussions between counsel, the Movant filed its initial motion for lift stay relief on January 13, 2001. It is important to note the debtors had completed their chapter 13 plan before the motion was filed. The initial motion was denied without prejudice due to inadequate service, and the instant motion was filed on March 14, 2001.

In addition to the debtors' Objections and the evidentiary hearing referenced above, the Court has considered the joint Stipulation of Facts [Dkt. # 108–1] filed on April 12, 2001, the Memorandum of Law Regarding Retroactive Annulment of the Automatic Stay filed by CAPX on April 11, 2001 [Dkt. # 106–1] and the Debtors' Memorandum of Law in Support of Debtors' Objection to Motion for *Nunc Pro Tunc* Relief from Automatic Stay filed on April 24, 2001 [Dkt. # 114–1].

During the course of the evidentiary hearing on April 12, 2001, the debtors' counsel stated that the debtors had no opposition to this Court granting 11 U.S.C. § 362(d) relief from stay provided the relief was not retroactive, the parties stipulated that CAPX was the current holder of the subject mortgage, and Alice K. Stockwell testified regarding her secondary education degree, business experience at an insurance agency and as operator/manager of a horse breeding farm intermittently for 30 years, her business management during 1991–92, and her involvement in handling family finances. Ms. Stockwell also testified that when a pre-petition creditor, identified as Mr. Jordan, attempted to pursue his claims against the debtors in state court post-petition she advised her attorney who then contacted the creditor regarding the debtors' rights under § 362. Ms. Stockwell further testified that she did not understand the automatic stay to apply to debts that arose post-petition and that she did not believe that she was required to call the bank to advise the Movant that she had a bankruptcy case pending because she was aware that the bank was receiving payments under the chapter 13 plan and presumed the bank's representatives knew about these payments, and therefore knew about the chapter 13 case. No other witnesses testified.

While emphasizing that the debtors and their counsel had actual notice of the claims transfer, counsel for the Movant acknowledged during the evidentiary hearing that the Movant neither amended the proof of claim on file nor gave the Bankruptcy Court Clerk's Office notice of the transfer of the claim from Merchants to Atlantic to Capital Crossing Bank to CAPX. Although the debtors, their counsel and the chapter 13 trustee were admittedly aware that Atlantic became the actual creditor, the debtors' counsel asserted that it was the Movant's obligation to notify the Bankruptcy Court Clerk's Office of its status as assignee of the claim and to otherwise file a notice of claim transfer pursuant to Bankruptcy Rule 3001(e).

The Movant has denied any obligation to provide notice of a claim transfer post-petition under Bankruptcy Rule 3001(e) and asserted that because the chapter 13 trustee was making plan payments to Atlantic that Atlantic itself should have been notified of the hearing to modify the plan in 1998, thereby obviating the issue of any lack of notice to the Movant of the pending bankruptcy. The Movant essentially relies upon the debtors' failure to notify it of the pending bankruptcy during the foreclosure proceedings and beyond as the equitable basis for its right to *nunc pro tunc* relief, while the debtors maintain that they were not obligated to remind each successor in interest of the pending bankruptcy under the circumstances and that actions taken

in violation of the automatic stay are void *ab initio*. Both parties seek shelter from the consequences of their actions or inactions based upon the equitable powers of this Court.

### Issue

The issue presented is whether a creditor, who is successor in interest to a creditor of record, may obtain relief from stay *nunc pro tunc* for cause pursuant to § 362(d)(1) so that relief obtained through a foreclosure action undertaken, in violation of an automatic stay, may be deemed effective on the grounds that the debtors failed to notify the creditor of their pending bankruptcy at any time during the pendency of the foreclosure proceedings.

### Discussion

The Movant asks this Court to grant lift stay relief retroactively in order to validate a state court foreclosure action undertaken by a successor creditor during the pendency of a bankruptcy case, even though it has not filed an appearance or amended proof of claim, and obtained foreclosure relief in clear contravention of the protections of the automatic stay. Both parties present formidable arguments in support of their respective positions and both parties emphasize the unfairness, inconvenience and adverse consequences that will ensue if their view is not adopted by this Court. This Court has carefully considered the record and applicable case law in seeking to resolve this dispute in a fair and equitable manner. In so doing, the Court starts with the premise that neither party is blameless for the current predicament they have, together, created.

■■■ To obtain relief from the automatic stay pursuant to § 362(d), a creditor must show the court that its interest in the debtor's property is sufficiently clear and in need of protection to justify exempting the property from the normal course of bankruptcy proceedings. *See Eastern Re-*

*fractories Co., Inc. v. Forty Eight Insulations, Inc.*, 157 F.3d 169 (2nd Cir.1998); *First National Bank v. Turley*, 705 F.2d 1024 (8th Cir.1983); *Matthews v. Rosene*, 739 F.2d 249 (7th Cir.1984). Actions taken in violation of the automatic stay are generally void *ab initio, In re 48th Street Steakhouse, Inc.*, 835 F.2d 427 (2nd Cir. 1987), even where there is no actual notice of the existence of the stay. *See In re Calder*, 907 F.2d 953 (10th Cir.1990); *In re Smith*, 876 F.2d 524 (6th Cir.1989). Therefore, the automatic stay should only be annulled to give effect to actions taken in violation of the stay in limited circumstances. *See Eastern Refractories Co., Inc. v. Forty Eight Insulations, Inc, supra; In re Lizeric Realty Corp.*, 188 B.R. 499 (Bankr.S.D.N.Y.1995). It has been noted that "any equitable exception to the stay should be narrow and only applied in extreme circumstances." *In re Shamblin*, 890 F.2d 123, 126 (9th Cir.1989); *In re Williams*, 124 B.R. 311 (Bankr.C.D.Cal. 1991) (power to annul automatic stay must be exercised sparingly).

■■■ It is well recognized that a determination of whether to grant relief from stay retroactively is within the wide latitude of the Court with each decision being considered on a case-by-case basis. *See In re Soares*, 107 F.3d 969 (1st Cir.1997); *In re Syed*, 238 B.R. 133, 144 (Bankr.N.D.Ill. 1999). The party seeking retroactive lift stay relief has the burden of proving that the action taken in violation of the stay falls within the narrow exceptions to the rule voiding actions taken in violation of the stay. *In re Williams*, 124 B.R. at 317. Similarly, under § 362(g), the debtor has the burden of proof with respect to showing equitable grounds for denying the requested relief. *See In re Coleman*, 52 B.R. 1 (Bankr.S.D.Ohio 1985).

In order to determine whether the circumstances are sufficiently compelling to warrant *nunc pro tunc* lift stay relief, courts have considered a variety of factors:

> (1) if the creditor had actual or constructive knowledge of the bankruptcy filing and, therefore, of the stay; (2) if the debtor has acted in bad faith; (3) if there was equity in the property of the estate; (4) if the property was necessary for an effective reorganization; (5) if grounds for relief from the stay existed and a motion, if filed, would likely have been granted prior to the automatic stay violation; (6) if failure to grant retroactive relief would cause unnecessary expense to the creditor; and (7) if the creditor has detrimentally changed its position on the basis of the action taken.

*In re Lett,* 238 B.R. 167, 195 (Bankr. W.D.Mo.1999); *see also In re Williams,* 124 B.R. at 317; *In re Pulley,* 196 B.R. 502 (Bankr.W.D.Ark.1996). Whether cause exists to grant relief from the automatic stay, retroactive or otherwise, is a matter within the discretion of the bankruptcy court. *In re Siverling,* 179 B.R. 909 (Bankr.E.D.Cal.1995); *see also In re Radco Merchandising Services, Inc.,* 111 B.R. 684 (N.D.Ill.1990) (bankruptcy courts have power to tailor remedies for violations of its order to suit the underlying purposes of its order).

In this instance, no single factor is controlling but each of the above factors is relevant. Certainly, it may be argued that as to the first factor, the Movant, through its predecessors in interest, had at least constructive, if not actual, knowledge of the existing bankruptcy. The receipt of plan payments, not to mention any corresponding paper trail, should have placed the Movant on notice of the bankruptcy. *See In re Cepero,* 226 B.R. 595 (Bankr. S.D.Ohio 1998) (fact that creditor too busy to check records in timely manner does not detract from willfulness of conduct).

While the debtors assert that they were under no affirmative obligation to alert or remind a creditor regarding their existing bankruptcy, nor apparently to alert even their counsel of the post-petition foreclosure proceedings, a debtor is under a duty to exercise due diligence in protecting and pursuing his or her rights and in mitigating any damages with regard to a creditor's violation of the automatic stay. *In re Sammon,* 253 B.R. 672 (Bankr.D.S.C.2000). Although this Court does not, as to the second factor, make a finding that the debtors acted in bad faith or otherwise had an affirmative duty to notify or remind a known creditor of the pendency of a bankruptcy proceeding, *see In re Augustino Enterprises, Inc.,* 13 B.R. 210, 212 (Bankr.D.Mass.1981), it is clear to this Court that a debtor may not remain "stealthily silent" while a creditor unknowingly violates the automatic stay in order to reap strategic or monetary advantage. *See In re Smith,* 876 F.2d 524 (6th Cir. 1989); *In re Calder,* 907 F.2d 953 (10th Cir.1990). There appears to be some suggesting that the debtors in this instance remained "stealthily silent" in order to gain some additional time or advantage in dealing with this creditor concerning their post-petition payment defaults. However, this Court had the opportunity to evaluate the demeanor of Ms. Stockwell while testifying in this regard and determines that there is no credible evidence that the debtors calculated to remain "stealthily silent" during the foreclosure proceedings in order to gain some advantage herein. Instead, the Court is confronted with parties who it finds simply failed to communicate adequately with either each other, the Bankruptcy Court Clerk's Office, their counsel or their business affiliates in order

to avert an unwitting violation of the automatic stay.

It is apparent that as to the third factor, the debtors have substantial equity in the subject property and occupancy rights which would be at risk should CAPX be granted immediate and full benefit of its violation of the automatic stay, with all opportunity to redeem the property having been extinguished.

While the subject property may no longer be necessary for an effective reorganization because the plan is already completed and, therefore, analysis of the fourth factor may appear to favor the Movant, the same reasons espoused by the debtors regarding their need to retain an interest in the premises under their plan arguably apply to their financial circumstances after plan completion.

Regarding the fifth factor, had the motion to lift stay been filed by the Movant under the circumstances existing in August, 1999, it seems quite plausible from the record that the motion would have been granted.

The parties have focused considerable attention on the issue of the added expense that will be incurred should the creditor be required to recommence foreclosure proceedings in state court. The creditor is quick to point out the adverse consequences of added time, expense and inconvenience that will result if the automatic stay is not annulled to recognize their successful foreclosure judgment obtained without opposition in state court. The debtors attribute the added expense to the bitter fruits of ill-gotten gains and insist the extra expense is warranted under the circumstances. There is no question that the creditor will incur added expense, additional time and inconvenience in the event it is required to repeat the foreclosure process.

Lastly, as to the seventh factor, since the Movant has not sold or otherwise disposed of the subject property or evicted the debtors, there is no showing that it has materially altered its position on the basis of the action taken. Arguably, it has removed the subject property from any income stream while awaiting a determination of the pending motion, but such action is the natural consequence of any automatic stay violation and serves to mitigate potential damages. As such, it does not constitute a material change in the creditor's position.

As indicated above, this Court relies upon its broad equitable powers to fashion an appropriate remedy in this matter. While factors one through three may tend to favor the debtors, it likewise appears that the remaining factors tend to favor the creditor and that no single element is dispositive in this instance. Disputes such as this are best determined by weighing all the factors on a case-by-case basis. In light of all the factors and circumstances, the Court remains principally concerned that the debtors' counsel, the debtors and the trustee had notice that Atlantic was the actual creditor, and that the trustee had even disbursed a payment made payable to Atlantic in February, 1998, prior to the plan modification hearing in December, 1998, and yet the debtors' counsel failed to notify Atlantic of the hearing to modify the plan. Had Atlantic been served such a notice, the stay violation might not have occurred. Similarly, the Court is cognizant that the creditor had institutional knowledge or notice of the bankruptcy case through the activities of its predecessors in interests and the various periodic payments submitted to Atlantic by the trustee and communication of that information to its counsel might have resulted in a timely lift stay motion. Therefore, the Court must conclude neither party has

acted with impunity—or the requisite level of diligence—in this matter.

After carefully considering the foregoing case law, the applicable factors, the actions and inaction of the respective parties, the evidence presented during the hearing, the matters filed of record, and the exceptional circumstances presented in this dispute, this Court determines the fairest remedy to be a sort of splitting of the baby. The Court will grant lift stay relief retroactively to the commencement of the state court foreclosure proceedings and related transactions, with one significant condition. In light of the relative actions and inaction of the parties, the lift stay relief is conditioned upon each party providing protection of the other's interest. First, the creditor movant shall reinstate the six month redemption period for the debtors as set forth in the underlying foreclosure decree effective the date of entry of the Order implementing this ruling, and second, the debtors shall make timely monthly interest payments during the reinstated redemption period. Unless the parties demonstrate otherwise within 15 days, the amount of the monthly interest payment will be equal to the amount of the regular monthly mortgage payment. In this way, the creditor should be protected from suffering further loss during this redemption period and the debtors will be doing no more than is required under the mortgage and chapter 13 while also having the opportunity to redeem their home from foreclosure. In the event the debtors fail to timely make the regular monthly payments to the Movant during the reinstated redemption period, then this Court will consider an affidavit of default from the Movant and, if well taken, will immediately enter an order terminating the redemption period and the requirements of further monthly payments, thereby allowing the Movant to exercise its rights fully under Vermont law as if the redemption period had expired naturally. In this fashion, the debtors may pursue mechanisms for protecting the equity they have in the property if they so desire, but are under no obligation to make any payments to the Movant—nor to delay the foreclosure—if they do not wish to pursue a refinance or redemption.

Based upon the foregoing, the Movant's Motion for Relief from Stay *nunc pro tunc* is granted to the extent that the foreclosure judgment obtained in state court will stand but denied to the extent that the debtors' six month redemption period as set forth in the underlying state court foreclosure judgment is reinstated; and the Movant is directed to accept monthly interest payments from the debtors to be paid by the 15th of each month, starting on June 15, 2001, during the redemption period.

The foregoing decision is without prejudice to the merits of the debtors' pending adversary proceeding [AP # 01–1005], seeking damages arising from a violation of the automatic stay by CAPX.

The Movant is directed to submit an Order forthwith effectuating the terms of this decision, including the amount of the monthly payment, after settlement of the Order with the debtors' counsel.