**In re MARKETXT HOLDINGS, CORP., Mkxt, LLC, Marketxt, Inc. And Epoch Investments, LP f/k/a Empyrean Investments, LP, Debtor.**

**Chimera Capital, L.P., Gblatt LLC, Jared Gerstenblatt And Fat Boys Partners, LLC, Appellants,**

**v.**

**Alan Nisselson, Distribution Agent and Responsible Officer for Marketxt Holdings Corp., Appellee.**

Nos. 04–12078 (ALG), 09 Civ. 7287(PKC).

United States District Court, S.D. New York.

April 15, 2010.

Christopher J. Battaglia, Halperin Battaglia Raicht, LLP, New York, NY, Stephen F. Gordon, Thompson Coburn LLP, Saint Louis, MO, for Chimera Capital, L.P.

Howard L. Simon, Windels Marx Lane & Mittendorf LLP, New York, NY, for Alan Nisselson.

*MEMORANDUM AND ORDER*

P. KEVIN CASTEL, District Judge.

This is an appeal from the August 5, 2009 order (the "Order") of the United States Bankruptcy Court for the Southern District of New York (Allan L. Gropper, U.S.B.J.) granting the motion of Alan Nisselson, the former Chapter 11 Trustee and the current Distribution Agent and Responsible Officer of the Debtor (the "Responsible Officer") seeking retroactive annulment of the automatic stay for an award against the debtor, which was rendered by an NASD arbitration panel after an involuntary bankruptcy petition had been filed against the debtor (the "Award").[1] In the Order, the Bankruptcy Court also reduced the proofs of claims filed by Chimera Capital LP, Fat Boy Partners, LLC, Gblatt, LLC and Jared Gerstenblatt (the "Claimants") based on the preclusive effect of that Award. For the reasons stated below, the Order of the Bankruptcy Court is affirmed.

BACKGROUND

I. *Factual History*

The relevant facts are undisputed. On or about March 15, 2001, Gerstenblatt entered into an exclusive trading agreement ("ETA") with Momentum Securities, L.L.C. ("Momentum"). (Exhibit 1 to the Declaration of Alan Nisselson (the "Nisselson Decl."), Bankruptcy Docket No. 1566.) Momentum is a former affiliate of the debtor. (Nisselson Decl. ¶ 9.) On or about May 23, 2001, Gerstenblatt and Momentum entered into a "Most Favored Nation" addendum to the ETA. (Nisselson Decl. Exh. 1.) The Most Favored Nation addendum required the debtor (which was formerly known as Tradescape Corporation) to provide Gerstenblatt, Chimera Capital LP, Gblatt LLC and an entity identified as "Chimera," with business terms "at least as good as the business terms offered to any other Tradescape or Momentum Customer." (*Id.*)[2] In April 2002, the Claimants commenced an NASD arbitration against the debtor for violating this requirement. (Declaration of Jared Gerstenblatt (the "Gerstenblatt Decl.") ¶ 2, Bankruptcy Docket No. 1581.) The Claimants eventually filed an amended statement of claim in which they requested approximately $3.44 million for the debtor's breach of the Most Favored Nation addendum, plus additional amounts for lost profits, overcharges and improper transfers. (Nisselson Decl. Exh. 3.)

---

1. "Responsible Officer" is a term used in the debtor's liquidation plan. (Exhibit A to the Second Amended Disclosure Statement at 13, Bankruptcy Docket No. 1228.) The Responsible Officer is the sole officer for the debtor, and will function in this capacity until the debtor has been dissolved. (*Id.*)

2. The Responsible Officer and the Claimants treat Gerstenblatt, Chimera Capital LP, Gblatt LLC and "Chimera" as synonymous with the Claimants. I will do the same.

The NASD arbitration panel held six days of hearings between June 2 and October 20, 2003. (Nisselson Decl. ¶ 19.) According to the Claimants, during the arbitration, the debtor claimed, at least twice, that it did not have any documents responsive to the Claimants' discovery requests, including documents relating to the business terms that the debtor afforded to its other customers. (Gerstenblatt Decl. ¶¶ 3, 5.)

On March 26, 2004, before the NASD arbitration panel issued a decision, several individuals and organizations (none of which were one of the Claimants), commenced an involuntary bankruptcy case against the debtor under chapter 7, title 11, United States Code. (Involuntary Petition of Marketxt Holdings Corp., Bankruptcy Docket No. 1.) The bankruptcy case was subsequently converted to a voluntary chapter 11 proceeding. (Order on Conversion from Chapter 7 to Chapter 11, Bankruptcy Docket No. 106.)

On or about May 10, 2004, the NASD arbitration panel rendered the Award, *i.e.*, a judgment in favor of the Claimants in the amount of approximately $545,526, plus interest. (Nisselson Decl. Exh. 6.) All parties agree that the NASD arbitration panel did not have notice of the bankruptcy proceeding, and thus, did not have notice of the automatic stay. The parties also agree that the Claimants did not have notice of the involuntary petition prior to the arbitration panel's award. Apparently, the debtor was aware of the involuntary petition but failed to bring it to the panel's attention.

After the arbitration panel's decision, the Claimants became aware of additional undisclosed breaches of the ETA's "Most Favored Nation" addendum. (Gerstenblatt Decl. ¶ 8.) According to the Claimants, the debtor had provided substantially better terms to another of its customers,

Tanzman, Rock & Kaban, LLC ("TRK"), than it had provided to the Claimants. (*Id.*) As a result of this discovery, on July 28, 2005, each of the four Claimants filed a claim for $36,989,990.87. (Proofs of Claim of Chimera Capital LP, Gblatt, LLC, Jared Gerstenblatt, and Fat Boy Partners, LLC, Bankruptcy Docket Nos. 1677–80.) A footnote on the attachment to each of the proofs of claim stated that "while four separate Proofs of Claim are being filed, one for each of the entities and person stated, there is only one total claim amount (as stated in each of the Proofs of Claim) which will be divided among the claimants as the Court may allow." (*Id.*) Thus, these four claims are actually one claim for approximately $37 million (the "Claim"). As with the claim before the NASD arbitration panel, this Claim is based on the debtor's alleged violation of the ETA's Most Favored Nation addendum. (*Id.*)

The Responsible Officer, then the debtor's chapter 11 trustee, objected to the Claim on, among other grounds, that the Award should had preclusive effect, which would reduce the Claim to the amount awarded by the arbitration panel. (Objection to Proofs of Claim, Bankruptcy Docket No. 1212.) In response, the Claimants argued that the arbitration panel's decision could not have preclusive effect because it was issued post-petition and in violation of the automatic stay, making it void. (Claimants' Response to Objection, Bankruptcy Docket No. 1526.)

On February 10, 2009, the Responsible Officer filed a motion to retroactively annul the automatic stay with respect to the Award and to reduce the Claim to the amount awarded by the panel. (Notice of Motion, Bankruptcy Docket No. 1569.) The Bankruptcy Court granted this relief in the Order. (Order, Bankruptcy Docket No. 1673.)

## II. *The Bankruptcy Court's Decision*

Upon the filing of a bankruptcy petition, section 362 of the Bankruptcy Code automatically stays the "commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title...." 11 U.S.C. § 362(a)(1). The Bankruptcy Court concluded that the automatic stay applied to arbitrations, making void any arbitration award issued while the automatic stay was in effect. (Memorandum of Opinion, dated July 20, 2009, Bankruptcy Docket No. 1665 (the "Op.") at 5–6.) The Bankruptcy Court then concluded that the arbitration award could be given effect only if the automatic stay were retroactively lifted, *i.e.*, annulled. (*Id.* at 6.)

The Bankruptcy Court recognized "that the important policy objectives advanced by the automatic stay require that courts exercise discretion to annul the stay sparingly, and only when the moving party has met its burden of showing cause." (*Id.* at 7.) It identified a non-exclusive list of factors set forth in *In re Stockwell*, 262 B.R. 275, 281 (Bankr.D.Vt.2001), that courts use in determining whether to annul an automatic stay. (Op. at 6.) The Bankruptcy Court noted that these factors were developed in the context of a creditor seeking to annul the stay, rather than a debtor, and found that "the most relevant *Stockwell* factors are 5 and 6," (*id.* at 6–7), which are "(5) (*id.*) grounds for relief from the stay existed and a motion, if filed, would likely have been granted prior to the automatic stay violation, [and] (6) if failure to grant retroactive relief would cause unnecessary expense to the creditor...." *Stockwell*, 262 B.R. at 281. The Bankruptcy Court then concluded that its analysis of the fifth *Stockwell* factor required analysis of the factors set forth in *Sonnax Industries, Inc. v. Tri Component Products Corp. (In re Sonnax Industries, Inc.)*, 907 F.2d 1280, 1286–88 (2d Cir.1990). (Op. at 7.)

The Bankruptcy Court found that four of the twelve *Sonnax* factors were relevant and all four supported annulling the stay. (*Id.* at 7–8.) Thus, the Bankruptcy Court found that the fifth *Stockwell* factor favored annulling the stay. The Bankruptcy Court also found that the sixth *Stockwell* factor supported annulling the stay because "[i]n this case, the reopening of the parties' dispute would require new proceedings, which would be challenging and expensive due to the time that has elapsed since the rendering of the award, the bankruptcy filing of the Debtor, and its subsequent liquidation." (*Id.* at 8.)

The Bankruptcy Court then determined that the Award did not need to be vacated due to fraud. It assumed, *arguendo*, that the debtor withheld certain documents during the course of the arbitration and that this withholding constituted fraud. (*Id.* at 9.) Even so, according to the Bankruptcy Court, "the Claimants had ample opportunity prior to and at the NASD hearings to discover the facts relating to" whether the debtor had offered more favorable business terms to another entity, TRK. (*Id.* at 10.) This finding was based, in part, on the fact that at the arbitration, the Claimants "sought and were granted authority to subpoena representatives of TRK to testify at the NASD hearings and to produce copies of the agreements between TRK, the Debtor and Momentum," but did not do so. (*Id.* at 11.) In addition, the Bankruptcy Court also found that E*Trade Financial Corp., which now owns Momentum, "provided the Claimants with documents evidencing the business terms offered to TRK and that at the NASD

hearings, the Claimants had the opportunity to examine a former employee of the Debtor, who had extensive and detailed knowledge about the business terms offered to TRK." (*Id.*)

Having found that the Award could not be vacated due to fraud, the Bankruptcy Court determined that the Award was entitled to preclusive effect. (*Id.* at 11–12) This decision was based on the fact that the "Claimants are the same parties involved in the NASD arbitration, and their proofs of claim are based on the same cause of action arbitrated at the NASD," and that "there were evidentiary hearings over six days on the Claimants' claims, and the NASD issued an award on the merits." (*Id.* at 12.) The Bankruptcy Court thus fixed the amount of the Claimants' claim at $545,526, plus interest—the amount of the Award. (*Id.*)

III. *Subsequent Procedural History*

Following entry of the Bankruptcy Court's order, Claimants filed a timely notice of appeal. (Docket No. 1). After full briefing, I held oral argument on April 9, 2010.

DISCUSSION

I. *Standard of Review*

 District courts review a bankruptcy court's conclusions of law *de novo* and its factual findings for clear error. *N.Y. Typographical Union No. 6 v. Maxwell Newspapers, Inc. (In re Maxwell Newspapers, Inc.)*, 981 F.2d 85, 89 (2d Cir.1992). The Second Circuit has not addressed what standard of review applies to decision to annul the automatic stay, but it reviews decisions regarding lifting the automatic stay for an abuse of discretion. *See Sonnax*, 907 F.2d at 1286. Because I see no reason why that standard would not also apply to decisions granting retroactive relief from the automatic stay, I will review the Bankruptcy Court's decision for

an abuse of discretion. This is in accord with other courts. *See, e.g., In re Myers*, 491 F.3d 120, 128 (3d Cir.2007) ("Whether to annul the automatic stay is a decision committed to the bankruptcy court's discretion, and may be reversed only for abuse of that discretion.").

II. *Retroactive Annulment of the Automatic Stay*

The Bankruptcy Court did not exercise its discretion in an unbridled manner. The Bankruptcy Court acknowledged that a request for retroactive relief from the automatic stay should be granted sparingly. It proceeded to identify the appropriate standards from the existing case law which directed the exercise of that discretion. The Bankruptcy Court then applied those standards to the facts before it. In doing so, it properly exercised its discretion to reach an equitable result. There is no basis to conclude that had the Award been more favorable to the Claimants, the Bankruptcy Court would have exercised its discretion in a different manner.

 The arbitration panel rendered the Award while the stay was in effect. The Award, therefore, violated the stay and was void. *Savers Fed. Savs. & Loan Ass'n v. McCarthy Constr. Co. (In re Knightsbridge Development Co.)*, 884 F.2d 145, 148–49 (4th Cir.1989) (an arbitration award rendered after the automatic stay was in effect violated the stay even though all of the evidence was submitted to the panel pre-petition). Section 362(d) of the Bankruptcy Code allows a court, upon the request of a party and after notice and a hearing, to "grant relief from the [automatic] stay ... such as by terminating, annulling, modifying, or conditioning such stay," for "cause." 11 U.S.C. § 362(d). "[A]n order 'annulling' a stay does have retroactive effect, and thereby reaches back in time to validate proceedings or

actions that would otherwise be deemed void *ab initio.*" *Eastern Refractories Co. Inc. v. Forty Eight Insulations Inc.,* 157 F.3d 169, 172 (2d Cir.1998).[3]

There is no Supreme Court or Second Circuit authority setting forth the test that courts should use to determine when retroactive relief from the automatic stay is appropriate. As one court has noted, although bankruptcy courts have the power to afford retroactive relief from the automatic stay, "there is less appellate clarity as to the appropriate test for retroactive stay relief." *In re Myers,* 491 F.3d at 129 (quotation marks omitted).

In *Sonnax,* however, the Second Circuit addressed the analogous situation of whether there was "cause" under section 362(d)(1) to lift the stay, allowing a party to proceed with its action outside of the bankruptcy court. 907 F.2d at 1285–88. The court noted that neither section 362 nor its legislative history define "cause." *Id.* at 1285. The Second Circuit then cited the twelve factors an earlier bankruptcy court decision had "catalogued ... to be weighed in deciding whether litigation should be permitted to continue in another forum." *Id.* at 1286 (citing *In re Curtis,* 40 B.R. 795 (Bankr.D.Utah 1984)).[4] The Second Circuit characterized the issue as

"unstructured," which led to its conclusion that the decision to lift the stay was committed to the discretion of the bankruptcy judge. *Id.*

Turning to the merits, the Second Circuit found that only four of the twelve factors it identified were relevant to its determination that denial of the stay was appropriate. *Id.* at 1286–87. Thus, not every *Sonnax* factor is relevant to the analysis of whether to lift the stay in every case.

■ Claimants argue that retroactive relief from an automatic stay may only be granted where there are compelling circumstances. They also argue that the Bankruptcy Court erred because it ignored the *Stockwell* factors that it found were irrelevant, and instead, only focused on the fifth and sixth *Stockwell* factors. According to the Claimants, this is tantamount to an unbounded balancing of the equities approach, which they view as presenting an improper tilt in favor of the debtor.

In support of their argument that retroactive stay relief may be granted only in compelling circumstances and that a balancing of the equities approach is improp-

**3.** Claimants argue in their brief that section 362(d) does not give bankruptcy courts the power to retroactively give effect to an action that was taken in violation of the stay. At oral argument, Claimants conceded that this Court was bound by the Second Circuit's decision in *Eastern Refractories,* and that this argument was made solely to preserve it for any further appeal.

**4.** The *Sonnax* factors are:
(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5)

whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms. *Id.*

er, Claimants cite the First Circuit's decision in *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969 (1st Cir.1997), in which the court concluded that retroactive relief from the stay "should be the long-odds exception, not the general rule," and that "bankruptcy courts ordinarily must hold those who defile the automatic stay to the predictable consequences of their actions and can grant relief only sparingly and in compelling circumstances." *Id.* at 977, 978. Claimants' view of *Soares* and the proper analysis for granting an annulment of the stay is too limited.

In *Soares*, the First Circuit found that the bankruptcy court abused its discretion in retroactively annulling the stay to give effect to a creditor's foreclosure of the debtor's home. 107 F.3d at 978. In making this decision, the court looked at essentially equitable considerations. For example, it was "reluctant to reward creditors who, despite notice of a bankruptcy filing, fail for no discernible reason to notify courts in which they have initiated proceedings of the changed circumstances." *Id.* The court also noted that the creditor was represented by counsel and understood the stay and further noted that the debtor had not acted in bad faith. *Id.* Several of these circumstances were incorporated into the *Stockwell* factors.[5]

The Third Circuit has discussed several cases that addressed retroactive stay relief, and summed up those decisions by observing: "Even those cases that have subscribed to a narrow conception of the power to retroactively annul the stay have affirmed that balancing the equities is the appropriate test." *In re Myers*, 491 F.3d at 129. The court then stated that "[o]ther

courts have observed that the most important factors in making this determination are (1) whether the creditor was aware of the filing or encouraged violation of the stay; (2) whether the debtor engaged in inequitable, unreasonable, or dishonest behavior; and (3) whether the creditor would be prejudiced." *Id.* A Bankruptcy Appellate Panel sitting in the Ninth Circuit concluded that "the Ninth Circuit [had] adopted a balancing of the equities approach for analyzing a request for retroactive stay relief," and that a prior decision of that panel had identified a number of factors relevant to the analysis, any one of which could be so important as to outweigh all the others. *In re Williams*, 323 B.R. 691, 700 (9th Cir. BAP 2005), affd, 204 Fed. Appx. 582 (9th Cir.2006).

In *Stockwell*, the court set forth a list of factors courts should consider in determining whether circumstances are sufficiently compelling to warrant retroactive relief:

(1) if the creditor had actual or constructive knowledge of the bankruptcy filing and, therefore, of the stay; (2) if the debtor has acted in bad faith; (3) if there was equity in the property of the estate; (4) if the property was necessary for an effective reorganization; (5) if grounds for relief from the stay existed and a motion, if filed, would likely have been granted prior to the automatic stay violation; (6) if failure to grant retroactive relief would cause unnecessary expense to the creditor; and (7) if the creditor has detrimentally changed its position on the basis of the action taken.

*Stockwell*, 262 B.R. at 281 (quoting *In re Lett*, 238 B.R. at 195).

---

5. *In re Lett*, from which the *Stockwell* factors were taken, cited among other cases, Soares, in listing "[s]ome of the compelling circumstances considered by the courts in granting"

retroactive stay relief. 238 B.R. 167, 195 (Bankr.W.D.Mo.1999), *aff'd*, 1 Fed.Appx. 599 (8th Cir.2001).

In the usual case, it is a creditor, not a debtor or its representative that seeks to annul the stay. However, both parties agree that the *Stockwell* factors, which the Bankruptcy Court applied, inform the inquiry, and aid courts in determining whether to annul the stay. Because the factors were developed to address situations in which creditors seek to annul the stay, they are somewhat less helpful in a situation like this, where the debtor seeks to annul the stay. In such cases, the first *Stockwell* factor—whether the creditor had actual or constructive knowledge of the stay—is irrelevant. And, if it were to be altered to inquire into whether the debtor had knowledge of the stay, it would always be applied against any debtor that filed a voluntary petition, and frequently applied against an involuntary debtor. Fed. R. Bankr.P. 1010; Fed. R. Bankr.P. 7004(e) (together, requiring service of involuntary petition and summons on the debtor within 14 days). The seventh factor-whether a creditor has detrimentally changed its position—also would be irrelevant. Therefore, the Bankruptcy Court was correct in looking to the *Stockwell* factors as a guide to its equitable analysis, and basing its decision on those factors that were relevant to the Claim.

As stated above, the first and seventh *Stockwell* factors are irrelevant, and the parties agree that the third and fourth factors do not apply in this case. The Bankruptcy Court determined that analyzing the fifth *Stockwell* factor—whether a lift stay motion would have been granted had it been timely filed before the violation—required consideration of the *Sonnax* factors. *In re Worldcom, Inc.*, 325 B.R. 511, 522 (Bankr.S.D.N.Y.2005) ("In considering the fifth [*Stockwell*] factor, the appropriate analysis is whether relief would have been granted under the *Sonnax* Factors.").

■ The Bankruptcy Court's findings that relief would help resolve the issues, that the arbitration would not have interfered with the bankruptcy case and that a specialized tribunal—the NASD arbitration panel—had been set up to hear the case, were not clearly erroneous. Nor was its finding that the interest of judicial economy would have favored lifting the stay. The evidence already had been submitted to the arbitration panel and the hearing was complete before the bankruptcy petition was filed.

■ The sixth *Stockwell* factor addresses whether failure to grant an annulment would result in unnecessary expense to the creditor. The Bankruptcy Court applied that factor more broadly and found that failing to annul the stay would result in an unnecessary expense to the party seeking the annulment, in this case, the debtor. This was not clearly erroneous. If the Award were not given effect, the parties would be required to re-litigate a claim, as to which the record and briefing was fully concluded.

■ Consideration of the second *Stockwell* factor—bad faith—is particularly important where, as here, the debtor is the party seeking to annul the stay. Debtors are not entitled to litigate cases without first obtaining stay relief, in the hope that any favorable outcome will be retroactively ratified while any unfavorable outcome will be void and unenforceable. In this case, both parties agree that the original claim was fully submitted to the arbitration panel at the time the involuntary bankruptcy petition was filed, and that neither party did anything to further the arbitration after the petition was filed. Although the debtor failed to notify the arbitration panel about the bankruptcy filing, and therefore, about the stay, the Claimants do not argue this was done in bad faith. In fact, the Claimants concede that "because neither

the Debtor nor the ... Claimants had any way of knowing how the panel would rule, this is not the case of one party exhibiting bad faith in order to reap strategic or monetary advantage." (Claimants' Brief at 15.)

In a similar vein, the Claimants argue that the Bankruptcy Court gave the debtor a "trump card" in allowing the Responsible Officer to reject certain claims that were rendered in violation of the automatic stay while allowing it to accept the Award. The Claimants point to the fact that the Responsible Officer's basis for objecting to a claim filed by Kirk Sarkis Kazazian was that the default judgment which formed the basis of the claim was void because it, and the complaint that initiated that litigation, were filed in violation of the stay. (Objection to Kazazian Claim, Bankruptcy Docket No. 1194.) But, the Claimants have not demonstrated why, under the applicable framework, Kazazian was entitled to retroactive relief from the stay for his claim.

The Claimants' argument, that the Bankruptcy Court's decision represents a "sea change" in bankruptcy law is unwarranted hyperbole. The Bankruptcy Court recognized that granting retroactive relief from the automatic stay is a power that should be used "sparingly," but, after considering the relevant standards, it concluded that exercising that power was appropriate in this case.

In rendering its decision, the Bankruptcy Court identified and correctly applied the proper doctrinal framework. The Bankruptcy Court focused on the *Stockwell* factors that it considered relevant to its analysis, and determined that based on these factors, the equities in this case favored granting retroactive relief from the stay. It concluded, therefore, that the Responsible Officer had met his burden for showing "cause" to annul the stay. This is consistent with the Second Circuit's approach in *Sonnax*, in which it identified the factors that courts generally may consider in deciding whether to lift the stay, and then based its decision on the four factors that it determined were relevant to the case before it. This is not a situation, like the one presented in *Mazzeo v. Lenhart (In re Mazzeo)*, in which the Second Circuit remanded for further findings because, in rendering its decision to lift the automatic stay, "the bankruptcy court did not mention *Sonnax*, or any doctrinal framework, and it [was] unclear whether that court considered any of the *Sonnax* factors." 167 F.3d 139, 143 (2d Cir.1999).

Finally, at oral argument, the Claimants placed great weight on the fact that the Bankruptcy Court knew the outcome of the arbitration before it ruled on the Responsible Officer's motion. The fact that the Bankruptcy Court knew of the Award before it rendered its decision is of little consequence so long as the Bankruptcy Court identified the proper standards governing its exercise of discretion and applied them correctly. The Claimants' argument that the Bankruptcy Court's knowledge of the Award prevented it from neutrally applying the analytical framework discussed above, ignores the fact that every day courts are called upon to render decisions when they already know the outcome of a prior verdict, judgment or award. *See, e.g.,* Fed.R.Civ.P. 50(b)(3) (authorizing district courts to "direct the entity of judgment as a matter of law" after a jury has rendered a verdict).

The Bankruptcy Court did not abuse its discretion in concluding that the Responsible Officer was entitled to retroactive annulment of the section 362 stay to allow the Award to stand.

III. *Preclusive Effect of the Award*

██ The Claimants do not challenge the Bankruptcy Court's conclusion that the Award—if valid—has preclusive effect. They have therefore waived this issue. *In re Leslie Fay Companies, Inc.*, 222 B.R. 718, 721 n. 3 (S.D.N.Y.1998), *aff'd*, 182 F.3d 899 (2d Cir.1999) (Table) ("Although appellants also appeal the Bankruptcy Court's order denying them compensation for professional services and expenses, they make nary an argument on the topic in their opening brief, and have therefore waived the issue entirely."). Regardless, I agree with the Bankruptcy Court's conclusions on this point.

██ To vacate an arbitration award on the basis of fraud, the challenging party must show that there was a fraud, that it could not have been discovered using due diligence during the arbitration proceedings and that there was a material relation between the fraud and the award. *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1404 (9th Cir.1992) (per curiam); *see also Karppiner v. Karl Kiefer Machine Co.*, 187 F.2d 32, 35 (2d Cir.1951) (the party relying on an alleged perjurious statement must show that it could not have discovered the perjury during the arbitration). The Bankruptcy Court found that the Claimants could have discovered any alleged fraud by exercising diligence during the arbitration, including by taking discovery of TRK after they were authorized to do so. I agree, and conclude that the Award cannot be vacated based on fraud.

██ The final question then, is whether the Award is entitled to preclusive effect. To prove that a prior arbitration is entitled to preclusive effect, "a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the parties or those in privity with them; and (3) the

claims asserted in the subsequent action were, or could have been, raised in the prior action." *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir.2001) (quotation marks omitted and alterations incorporated). In this case, the arbitration was an adjudication on the merits, the Claimants were parties to the arbitration, and the claims either were or could have been asserted in the arbitration. Therefore, the Award has preclusive effect.

CONCLUSION

For the foregoing reasons, the Bankruptcy Court's Order of August 5, 2009 is AFFIRMED.

SO ORDERED.