# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 25, 2025

Lyle W. Cayce
Clerk

———————

No. 24-60377

———————

In the Matter of Ikechukwu H. Okorie

*Debtor*,

Ikechukwu H. Okorie,

*Appellant*,

*versus*

Kimberly R. Lentz; PriorityOne Bank,

*Appellees*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 2:24-CV-20

———————————————————————

Before Richman, Willett, and Douglas, *Circuit Judges*.

Per Curiam:[*]

Collectively, Ikechukwu H. Okorie ("Dr. Okorie") and his medical practice, Inland Family Practice Center, LLC ("Inland") have filed three bankruptcy cases. Two were initiated by Dr. Okorie, and the other was

———————————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

brought by Inland, whose sole member was Dr. Okorie. Each case involved PriorityOne Bank ("PriorityOne"), a secured lender to Dr. Okorie with real property collateral. This appeal arises from the second case filed by Dr. Okorie. There, after the bankruptcy court granted PriorityOne's motion to retroactively annul the automatic stay, thus validating PriorityOne's pre-petition foreclosure of Dr. Okorie's estate property it held as collateral, Dr. Okorie appealed to the district court, which affirmed. Dr. Okorie now appeals the district court's order affirming the bankruptcy court's stay annulment. We AFFIRM.

## I

In Dr. Okorie's first case, initiated on November 6, 2018, he filed an individual petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Mississippi ("First Case"). PriorityOne then filed a motion for abandonment and request for termination of the automatic stay under 11 U.S.C. § 362 or, alternatively, request for adequate protection. The motion was based on a commercial promissory note Inland executed in June 2018, which Dr. Okorie personally guaranteed. The promissory note was secured by commercial real estate on a property where Inland operated its clinic, located at 908 West Pine Street, Hattiesburg, Mississippi ("Clinic Property"). On December 19, 2018, the bankruptcy court granted PriorityOne's motion, ordering that the Clinic Property was abandoned from the bankruptcy estate and that the stay was terminated, thus allowing PriorityOne to foreclose on the property. Dr. Okorie then filed a motion to dismiss the First Case, which was followed by a motion to dismiss filed by the United States Trustee. The bankruptcy court granted both motions.

Before any foreclosure proceedings were initiated, Inland filed a voluntary bankruptcy petition under Chapter 11 on January 14, 2019 ("Inland

Case"). PriorityOne also sought termination of the automatic stay as to the Clinic Property in the Inland Case. The bankruptcy court granted PriorityOne's motion and entered an agreed order requiring Inland to make adequate protection payments to PriorityOne. When Inland defaulted on the March 2019 payment, per the agreed order, the stay terminated as to PriorityOne, and the Clinic Property was abandoned from the estate.

On February 27, 2019, Dr. Okorie filed a second individual Chapter 11 bankruptcy petition, which he later voluntarily converted to a Chapter 7 case ("Second Case"). This time, PriorityOne did not move for relief from the stay. Instead, on April 17, 2019, PriorityOne filed a proof of claim related to the promissory note—which had been guaranteed by Dr. Okorie—that granted PriorityOne its lien on the Clinic Property. PriorityOne's counsel also emailed a letter to Dr. Okorie's then-attorney expressing his view that, under § 362(c)(3), the automatic stay was terminated as to the Clinic Property because 30 days had passed since Dr. Okorie's filing of the Second Case. Dr. Okorie's attorney responded, "[w]e agree that there is no stay. The clinic will have moved out of 908 West Pine by May 1st [2019]."

On the same day, Inland filed a notice of intent to abandon the medical equipment housed at the Clinic Property. Inland then closed its location at the Clinic Property and moved out. In May and June 2019, the deed of trust's substitute trustee published notice of a foreclosure sale on the Clinic Property to be held on June 7, 2019, and PriorityOne's attorney gave notice to Inland and Dr. Okorie that PriorityOne was scheduled to foreclose on the property. At the foreclosure sale, PriorityOne bid $700,000.00 and purchased the Clinic Property, leaving an unsecured deficiency of $169,067.28 remaining.

In November 2019 and August 2020, respectively, Dr. Okorie and Inland submitted Chapter 11 plans for the Second Case and the Inland case. Both plans acknowledged the foreclosure and stated that any deficiency

would be paid as a general unsecured claim.[1]  On January 22, 2020, PriorityOne filed an amended proof of claim in the Second Case for the deficiency balance.

After the Second Case was converted to Chapter 7, Dr. Okorie received a discharge on October 5, 2021.  Over a year-and-a-half later, he filed an objection in the Second Case to PriorityOne's amended proof of claim, which the bankruptcy court construed as a motion under § 362(k) for violation of the automatic stay.  Dr. Okorie contended that PriorityOne's foreclosure on the Clinic Property constituted a willful violation of the stay made effective under § 362(a) upon his filing of the bankruptcy petition in the Second Case.  Though PriorityOne took the position that the foreclosure was lawful, PriorityOne also responded by filing in the Second Case a motion for abandonment and termination of the automatic stay nunc pro tunc and, or alternatively, annulment of the stay to April 17, 2019—the date when PriorityOne's counsel and Dr. Okorie's then-attorney exchanged emails sharing their view that the stay had terminated.

The bankruptcy court overruled Dr. Okorie's objection and entered an order denying Dr. Okorie's motion for violation of the stay.  Although the court noted that PriorityOne foreclosed on the Clinic Property without obtaining relief from the stay, it ultimately concluded that PriorityOne had "shown that the facts warrant[ed] annulment of the stay, and Dr. Okorie, who [bore] the burden of proof, ha[d] not shown why annulment should be denied."  The court granted retroactive annulment of the stay to April 17, 2019.  Because annulment of the stay effectively ratified the foreclosure sale,

_____

[1] The Chapter 11 plan for the Inland Case was confirmed in October 2020.  In March 2021, after conversion of the Second Case, Dr. Okorie filed his Official Form 108 ("Statement of Intention for Individuals Filing Under Chapter 7"), in which he declared his intention to surrender the Clinic Property.

the court decided that the questions of "whether the foreclosure violated the stay and, if yes, whether the violation was willful . . . need not be answered."

Dr. Okorie appealed the bankruptcy court's order to the United States District Court for the Southern District of Mississippi. Among other things, he challenged the correctness of the bankruptcy court's annulment of the stay and argued that the foreclosure sale constituted a willful violation of the stay. The district court affirmed. The district court found that the bankruptcy court did not abuse its discretion by retroactively annulling the automatic stay, and concluded that there was no clear error in the bankruptcy court's factual findings that warranted annulment. After determining that the bankruptcy court's grant of retroactive relief from the stay validated PriorityOne's foreclosure on the Clinic Property, the district court found it unnecessary to discuss Dr. Okorie's contention that the foreclosure was a willful violation of the stay. Accordingly, Dr. Okorie's appeal was dismissed.

Proceeding pro se, Dr. Okorie now appeals from the district court's decision, arguing that the court erred (1) "when it failed to determine whether PriorityOne Bank's automatic stay violation was willful"; (2) "when it affirmed the Bankruptcy Court's retroactive annulment of the automatic stay"; (3) "in its interpretation and application of the" § 362 provisions regarding the stay and entitlement to damages; (4) "when it failed to address the procedural and substantive fairness of the foreclosure process taken by PriorityOne Bank"; and (5) "when it failed to adequately consider equitable principles in the decision to annul the stay and validate the foreclosure." We need only address Dr. Okorie's second and fifth arguments, as they are interrelated and serve as threshold issues in this case.

## II

"When we review a district court sitting as an appellate court, we apply 'the same standards of review to the bankruptcy court's findings of fact

and conclusions of law as applied by the district court.'" *Matter of Houston Reg'l Sports Network, L.P.*, 886 F.3d 523, 527 (5th Cir. 2018) (quoting *In re Age Ref., Inc.*, 801 F.3d 530, 538 (5th Cir. 2015)). Per those standards, we review "the bankruptcy court's findings of fact under the clearly erroneous standard, and the bankruptcy court's conclusions of law *de novo*." *Id.* A bankruptcy court's decision on a motion to modify a stay, and decision to enter a nunc pro tunc order, is reviewed for abuse of discretion. *In re Mirant Corp.*, 440 F.3d 238, 245 (5th Cir. 2006); *In re Amco Ins.*, 444 F.3d 690, 695 (5th Cir. 2006).

## III

The filing of a bankruptcy petition "operates as a stay against 'any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate' and 'any act to create, perfect, or enforce any lien against property of the estate.'" *Matter of Okedokun*, 968 F.3d 378, 386 (5th Cir. 2020) (quoting § 362(a)(3)–(4)). This stay automatically takes effect once a petition is filed, regardless of notice. *Id.* (citing § 362(a)).

However, under § 362(d), a bankruptcy court can annul the automatic stay. We have described the power of bankruptcy courts "to modify or annul the automatic stay" as "broad." *In re Cueva*, 371 F.3d 232, 236, 238 (5th Cir. 2004). Moreover, the statutory annulment power applies both prospectively and retroactively. *See Sikes v. Glob. Marine, Inc.*, 881 F.2d 176, 178 (5th Cir. 1989) ("The power to annul authorizes retroactive relief even unto the date of the filing of the petition giving rise to the automatic stay. The power to annul authorizes the court to validate actions taken subsequent to the impressing of the section 362(a) stay."); *In re Barnes*, 279 F. App'x 318, 319 (5th Cir. 2008).

No. 24-60377

Specifically, the statute provides two avenues by which, "[o]n request of a party in interest and after notice and a hearing," the bankruptcy court "shall" grant relief from the automatic stay, "such as by terminating, annulling, modifying, or conditioning" the stay. § 362(d). The first is where relief from the stay is warranted "for cause." § 362(d)(1). Second, and particular to a stay of an act against property of the debtor's estate, relief may be warranted if "(A) the debtor does not have an equity in such property" and "(B) such property is not necessary to an effective reorganization." § 362(d)(2)(A)–(B). Here, the bankruptcy court did not exceed its discretion by concluding that annulment of the automatic stay to April 17, 2019, was justified under both grounds identified by the statute.[2]

---

[2] Dr. Okorie cites *In re Stockwell*, 262 B.R. 275, 281 (Bankr. D. Vt. 2001), for the proposition that the bankruptcy court erred by not applying the factors listed in that case for consideration when determining whether to grant nunc pro tunc relief from the stay. Those factors, assembled from courts in various out-of-circuit jurisdictions, include:

> "(1) if the creditor had actual or constructive knowledge of the bankruptcy filing and, therefore, of the stay; (2) if the debtor has acted in bad faith; (3) if there was equity in the property of the estate; (4) if the property was necessary for an effective reorganization; (5) if grounds for relief from the stay existed and a motion, if filed, would likely have been granted prior to the automatic stay violation; (6) if failure to grant retroactive relief would cause unnecessary expense to the creditor; and (7) if the creditor has detrimentally changed its position on the basis of the action taken."

*Id.* (quoting *In re Lett*, 238 B.R. 167, 195 (Bankr. W.D. Mo. 1999), *subsequently aff'd*, 1 F. App'x 599 (8th Cir. 2001)). First, the bankruptcy court here had no obligation to examine this compilation of factors from *Stockwell*, which derived from another bankruptcy court and outside of this circuit. Second, we have not enumerated what factors bankruptcy courts in this circuit must consider with respect to modifying the stay. *Cf. In re Jackson*, 392 B.R. 666, 671 (Bankr. S.D. Miss. 2008) ("[T]he Fifth Circuit has not articulated the specific factors that should be considered by a bankruptcy court with respect to an annulment of the stay."). Rather, we have noted that such courts are afforded "broad discretion" in this context, of course within the statutory guideposts of § 362(d). *In re Cueva*, 371 F.3d at 238. Third, even giving credence to Dr. Okorie's argument, he disregards that the bankruptcy court in this case thoroughly considered at least two of the *Stockwell* factors (whether equity

7

No. 24-60377

**A**

"Cause" for lifting the automatic stay includes "the lack of adequate protection of an interest in property of such party in interest." § 362(d)(1). "Adequate protection," a bankruptcy term of art defined in § 361, "in short, . . . is a payment, replacement lien, or other relief sufficient to protect the creditor against diminution in the value of his collateral during the bankruptcy." *In re Scopac*, 624 F.3d 274, 278 n.1 (5th Cir. 2010), *opinion modified on denial of reh'g*, 649 F.3d 320 (5th Cir. 2011).

The lack of adequate protection for PriorityOne was first recognized by the bankruptcy court in its agreed order from the Inland Case. Recall that there, Inland failed to make the required adequate protection payments as set forth in the order, which led to termination of the automatic stay as to the Clinic Property in that case. In the Second Case, Dr. Okorie did not dispute the lack of adequate protection in his response to PriorityOne's motion for the bankruptcy court to annul the stay, instead positing that adequate protection was not required. Similarly, in the current appeal, Dr. Okorie fails to argue that he or Inland provided adequate protection to PriorityOne. Rather, he asserts that "the fact that neither Inland nor Appellant were making" adequate protection payments does not "place PriorityOne Bank in any higher priority compared to other creditors in the case." Indeed, this contention acknowledges, without refuting, the bankruptcy court's observation that adequate protection was lacking. And Dr. Okorie's reference to creditor priority is irrelevant for the central statutory inquiry: the existence of adequate protection of PriorityOne's interest in the Clinic

_____

existed in the estate property and whether the property was necessary for effective reorganization), both of which mirror the grounds for annulling the stay provided in § 362(d). *See Stockwell*, 262 B.R. at 281.

Property. As Dr. Okorie's contentions are unavailing, the bankruptcy court properly elected to annul the stay under § 362(d)(1).

**B**

The bankruptcy court likewise acted within its discretion by finding that stay relief was warranted under § 362(d)(2), which directs that, if the debtor does not have equity in the estate property at issue, and if the property is not necessary to an effective reorganization, "the court shall grant relief from the stay." § 362(d)(2)(A)–(B). When "the creditor is undersecured[,]" the debtor lacks equity in the property. *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375 (1988). "In Bankruptcy Code parlance an 'undersecured' claim is one supported by collateral valued at less than the amount of the claim." *In re Bartee*, 212 F.3d 277, 280 n.3 (5th Cir. 2000). "Once the movant under § 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the *debtor* to establish that the collateral at issue is 'necessary to an effective reorganization.'" *Timbers,* 484 U.S. at 375 (emphasis in original) (citing § 362(g)).

The bankruptcy court found that equity was lacking in the Clinic Property because Dr. Okorie pledged it as collateral to secure Inland's debt to PriorityOne, resulting in the property having "little or no equity for the benefit of the estate." This established PriorityOne as an undersecured creditor, thereby shifting the burden to Dr. Okorie to show that the Clinic Property was necessary for effective reorganization. *See Timbers,* 484 U.S. at 375; *In re Bartee*, 212 F.3d at 280 n.3. Dr. Okorie does not directly rebut the bankruptcy court's reasoning that the Clinic Property was not necessary to an effective reorganization because, by the time PriorityOne's counsel communicated the intended foreclosure with Dr. Okorie's then-attorney on April 17, 2019, "neither Inland nor Okorie were making any payments" as to

the Clinic Property, and "Inland was preparing to move out" of the property ahead of foreclosure. If any counter to the bankruptcy court's justification of annulment under § 362(d)(2) is cognizable from Dr. Okorie's briefing, it would be in his reply brief, where he repeats the immaterial assertion that PriorityOne "is not placed on a higher priority compared to other creditors." Therefore, he has failed to carry his burden. As the district court did not abuse its discretion by ruling that retroactive annulment of the stay was warranted under both bases provided in § 362(d), we see no reason to disturb the district court's affirmance of that decision.

## IV

Dr. Okorie further posits that the district court and the bankruptcy court erred by neglecting to "adequately consider equitable principles in the decision to annul the stay and validate the foreclosure." First, to the extent Dr. Okorie claims that the bankruptcy court was *required* to engage in an analysis of equitable principles—separate from the court's inquiry under § 362(d)—when assessing whether annulment of the stay was merited, he cites no precedent supporting that proposition. In any event, Dr. Okorie ignores the bankruptcy court's discussion that retroactive annulment was warranted here because of "exceptional circumstances." For instance, the court observed, *inter alia*, that in April 2019, Dr. Okorie's then-attorney communicated to PriorityOne's counsel that Inland would vacate the Clinic Property; on the same day, Inland filed a notice of intent to abandon its medical equipment located at the property; Dr. Okorie and Inland voluntarily vacated the property; neither Dr. Okorie nor Inland attempted to halt the foreclosure sale, despite having advance notice; Dr. Okorie and Inland's respective Chapter 11 plans acknowledged the foreclosure and provided for payment of PriorityOne's deficiency claim; Dr. Okorie and Inland's demonstrated inability to pay Inland's debt made foreclosure inevitable; and Dr. Okorie declared his intention to surrender the Clinic Property.

No. 24-60377

Dr. Okorie does not address these findings in his briefing. Instead, he contends that, "[t]here are legitimate concerns over the validity of the claim, the violation of the automatic stay, and the propriety of the foreclosure proceedings," and that "[t]he lower courts failed to apply their equitable powers to prove said concerns and check the violations of the law by PriorityOne Bank." This generalized statement does not hold weight against the bankruptcy court's specific observations in favor of granting relief from the stay. Accordingly, we see no clear error in the bankruptcy court's factual findings that grounded its stay annulment.

## V

It was well within the bankruptcy court's authority to grant PriorityOne's motion for nunc pro tunc annulment of the stay to April 17, 2019. Doing so ratified PriorityOne's post-petition foreclosure of the Clinic Property, notwithstanding whether the foreclosure contravened the stay. *See Picco v. Glob. Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir. 1990) ("[A]ctions taken in violation of an automatic stay are not *void*, but rather . . . they are merely *voidable*, because the bankruptcy court has the power to annul the automatic stay pursuant to section 362(d)") (emphasis in original) (citing *Sikes*, 881 F.2d at 179). With no clear error in the bankruptcy court's findings, nor abuse of discretion in its annulment of the stay, there is no need for us to reach Dr. Okorie's arguments on willful violation of the stay, fairness of the foreclosure process, and entitlement to damages. We AFFIRM.